MARCRAFT RECREATION
CORP., Plaintiff,

v.

FRANCIS DEVLIN CO., INC. and
Hoelzel S/A, Defendants.

No. 78 Civ. 2569 (KTD).

United States District Court,
S. D. New York.

Jan. 7, 1981.

Blum, Kaplan, Friedman, Silberman & Beran, New York City, for plaintiff; Steven B. Pokotilow, New York City, of counsel.

Rogers, Hoge & Hills, New York City, for defendants; Frank H. Gordon, James N. Blair, Dickerson M. Downing, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

In this diversity action to recover damages for breach of an exclusive agency agreement and for unjust enrichment, the defendants have moved for summary judgment. The plaintiff, Marcraft Recreation Corp. [hereinafter "Marcraft"], is a New Jersey corporation engaged in the manufacture of sporting goods equipment including paddle and racquet products. The defendant, Hoelzel S/A [hereinafter "Hoelzel"], is a Brazilian company which manufactures rubber products, including balls used in paddle and racquet sports. The other defendant, Francis Devlin Co., Inc. [hereinafter "Devlin"], was the sole representative for all of Hoelzel's sales in the United States until January, 1976.

## I

The parties' business relationship began in February, 1975 when Marcraft agreed to be the sole United States distributor of all sporting goods manufactured by Hoelzel. The parties were introduced to each other by Devlin. There exists some confusion over whether this initial agreement was in writing. There is no dispute, however, that the agreement expired on January 20, 1976.

Marcraft alleges that before this expiration date, the parties expended joint efforts to develop and refine a unique brand of paddle and racquet balls. Marcraft further alleges that between January 1976 and March 1977 they continued to jointly develop the balls with the understanding that once the development of the balls was completed, Marcraft would be the exclusive distributor of the balls in the United States for a period of five years with an option to renew for an additional five years. [Plaintiff's Memorandum p.14]. After the February, 1975 agreement had expired in January, 1976, Marcraft expressed its concern that the oral agreement between the parties had not been reduced to writing. [Blair Affidavit, ¶ 11, Exh.A]. According to Marcraft, Devlin and Hoelzel on numerous occasions assured Marcraft that a written agreement would be forthcoming. [Plaintiff's Memorandum in Opposition to Defendants' Motion, p.5].

Sometime in 1976, Marcraft offered to modify its relationship with Hoelzel by forming a distribution company in the United States which both parties would share in equally. Marcraft alleges that Hoelzel agreed to participate in this corporation and that both parties agreed to capitalize the corporation with five thousand dollars each. [Plaintiff's Memorandum, p.6]. Thereafter, Hoelzel never provided five thousand dollars, and Marcraft dissolved the corporation.

Despite these developments, Marcraft continued to distribute Hoelzel's balls and assist in their development. According to Marcraft, repeated efforts to finalize the exclusive distribution arrangement culminated in a letter dated March 21, 1977 from Marcraft's President, Nat Marks, to Hoelzel's President, Jorge Hoelzel, Jr. In that letter, Marcraft "once again offered and insisted that Hoelzel reduce its exclusive distribution arrangement with Marcraft into a written contractual arrangement." [Complaint ¶ 12] The letter expresses Marcraft's disappointment over the dissolution of the joint company and states in pertinent part:

> In view of the length of time and dedicated efforts we have put into the development of the NO. 1 and M–21 balls, plus the expenses of testing, (some of which you personally viewed when visiting us) the marketing, advertising and art which are all very costly, I would think that Marcraft by now should have an exclusive distributorship arrangement with you for at least five years with an option for another five years.

> *    *    *    *    *    *

> Please, Jorge, let's try to nail this down for I still feel that Marcraft and Hoelzel & Company can do very well together.

> With regard to the exclusive distribution of both balls I am sure that you must agree with me that this arrangement is both just and deserving and that a written contractual arrangement should be forwarded to us quickly. I am sure that you are aware of the expenditures to date and the necessary expenses to further promote these balls and therefore you can readily understand why this contract is of the utmost importance.

In a responsive letter ten days later, Mr. Hoelzel wrote:

> You have had problems and so did I, Nat. We are together in this enterprise relating to the NO. 1 and M–21 balls and I think that any written arrangement between us is superfluous and unnecessary and as far as we have motivation with these articles. I have not offered the balls to any other client, even because my production cannot be large enough, once the balls need an extensive quality control and are almost handmade piece by piece.

But the quality control is fully within my sake. I have long made up my mind to supply only articles of first quality, so as to get always the next order from my clients.

But if you still feel a contract is necessary, Nat, please send me a sketch of one. I will make the necessary adjustments on my part and return it for your approval.

Marcraft asserts that this reply letter constitutes a memorandum which evidences Hoelzel's agreement with the terms set forth in Marks' March 21 letter. [Plaintiff's Memorandum, p.8].

According to Marcraft, Devlin made subsequent assurances that a completed contract would be forthcoming from Hoelzel. Based on these assurances, Marcraft continued to perform as distributor for Hoelzel. Then, on December 29, 1977, Mr. Marks sent Mr. Hoelzel the following proposal by letter:

Jorge, of utmost importance is a matter discussed many times but never resolved. If we are to justify the expenditures for the marketing and promotion this ball, pay professionals for their endorsements, mailing, supply balls on a no charge basis for tournaments and many more outlays, then it becomes clearly imperative that we must have an exclusive contract directly from you to Marcraft for the distribution of the balls in the United States and Canada.

This exclusive contract should be for a minimum period of three (3) years with an option to renew for another three (3) years. I'm sure you can readily understand my feelings with regard to this matter. Several years of work have already been put into developing this ball with no apparent reward for either of us yet.

Now the work is done and we are ready to move forward—strongly. Your reply is needed now so that we can get started at once. We must be ready to deliver early in March and therefore have no time to lose.

In response, Mr. Hoelzel wrote that he would not enter into an exclusive agreement with Marcraft but stated that he would continue to offer Marcraft the best conditions for continued supply of Hoelzel goods. [Blair Affidavit, ¶ 17, Exh.D]. Marcraft responded to this letter by commencing this action. Marcraft's complaint alleges five claims: breach of contract, unjust enrichment, unfair competition, conversion and tortious interference with contractual relations. The latter two claims were dismissed by this Court in an earlier opinion. *See Marcraft Recreation Corp. v. Frances Devlin Co.*, 459 F.Supp. 195 (S.D.N.Y.1978).

The defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking dismissal of the plaintiff's three remaining claims on the grounds that the alleged contract between the parties is unenforceable under the statute of frauds, New York General Obligation Law § 5–701. In addition, the defendants seek dismissal of the complaint as against Devlin on the grounds that Devlin is an agent of Hoelzel and as a matter of law cannot be held liable for any breach of contract by Hoelzel.

## II

Marcraft contends that the exchange of letters between the parties satisfies the requirements of the statute of frauds. The plaintiff further contends that it has fully performed its part of the agreement and as a result is entitled to the contract's enforcement, regardless of the statute of frauds. Also, the plaintiff asserts that defendants should be estopped from pleading the statute of frauds.

New York law is clear that any agreement which by its terms is not to be performed within one year must be evidenced by a written note or memorandum signed by the party to be charged. *See* N.Y.Gen. Oblig.Law § 5–701(a)(1) (McKinney 1980 Supp.) The contract alleged to exist between the parties was for at least a three year period and therefore clearly comes within the requirements of the statute of frauds. The plaintiff describes the agreement between the parties as follows:

The original agreement between the parties was a simple oral agreement whereby in return for Marcraft's expertise in the racquet ball and handball field, a superior product would be jointly developed with Hoelzel. In return, for Marcraft's expertise, Marcraft would be the exclusive distributor of the balls for a five year term with an option to renew for five years.

[Plaintiff's Memorandum in Opposition, p.16].

This agreement was never formally put into writing and signed by the parties.

■ Under New York law, an exchange of letters may satisfy the statute of frauds if the letters together clearly refer to the same subject matter and contain all the material terms of the agreement. *See Manhattan Fuel Co., Inc. v. New England Petroleum Corp.*, 422 F.Supp. 797, 800 (S.D. N.Y.1976), *aff'd*, 578 F.2d 1368 (2d Cir. 1978). The letters "must state the entire contract with reasonable definiteness and certainty, so that the substance thereof will appear from the writing without any resort to parol evidence." *Dorman v. Cohen*, 413 N.Y.S.2d 377, 378–79, 66 A.D.2d 411, 412 (1st Dep't 1979) (citations omitted).

■ The letters exchanged between the parties fall short of this standard. Mr. Marks' March 21, 1977 letter summarizes Marcraft's efforts to develop and market the balls. It is clear from a reading of this letter that no agreement for a five year exclusive distributorship had yet been reached. Hoelzel's reply letter of March 31, 1977 in no way evidences agreement to a five year contract. At most, this letter acknowledges an exclusive distributorship arrangement for an indefinite amount of time. Mr. Marks' subsequent letter on December 29, 1977 which proposes a three year contract confirms the lack of any agreement between the parties existing in March of 1977. Further evidence of there being no accord is Hoelzel's request in his March 31 letter to see a written proposal from Marks.

■ Plaintiff argues that the defendants should be estopped from using the statute of frauds as a defense because Hoelzel's letter of March 31, 1977 stating that a written agreement would be "superfluous and unnecessary" evidences the existence of an agreement or at least misled plaintiff into believing that the defendants would abide by a five year contract. I do not read Hoelzel's letter in that way at all. Considering the context in which the phrase was used, I do not believe Hoelzel was acquiescing to a five year contract, but was merely acknowledging the parties existing relationship. Moreover, plaintiff's insistence after receiving the March 31 letter that a written contract be signed indicates the plaintiff was not misled for long, if at all, by this statement.

Plaintiff further argues that he has fully performed his part of the agreement by developing the balls and that if the defendants do not honor the five year exclusive distributorship then plaintiff will be defrauded. According to the plaintiff, equity dictates taking the contract out from under the statute of frauds.

■ Under New York law, part performance generally will not exempt a contract not to be performed within one year from the requirements of the statute of frauds. *See Konigsberg v. Security National Bank*, 66 F.R.D. 439 (S.D.N.Y.1975). The equitable doctrine of part performance, however, may provide an avenue for enforcement of an unwritten contract in certain exceptional situations. Part performance that is clear, certain and definite in object and design as to be unequivocally referable to the agreement, and which will precipitate a fraud if the agreement is not enforced, removes the action from the defense of the statute of frauds. *Bankers Trust Co. v. Steenburn*, 95 Misc.2d 967, 409 N.Y.S.2d 51 (Sup.Ct. Chautauqua County 1978); *see* 56 New York Jur. §§ 247–256 (1967).

In *Philo Smith & Co. v. U. S. Life Corp.*, 420 F.Supp. 1266 (S.D.N.Y.1976), *aff'd*, 554 F.2d 34 (2d Cir. 1977), the federal district court restated the criteria for estopping the

use of the statute of fraud defense. These criteria are (i) a fraudulent oral promise by the defendant; (ii) upon which the plaintiff justifiably relies; (iii) by engaging in acts which are "unequivocally referable" to the oral promise; (iv) resulting in substantial injury to plaintiff. 420 F.Supp. at 1271–72.

■ First of all, plaintiff has not shown that the agreement under which they allegedly performed contained a five year term. As is clear from the record before me, the duration of the exclusive distributorship was never agreed upon. In a deposition, Mr. Marks admitted that the "stumbling block" between the parties was the five year term and he subsequently proposed a three year term. [Blair Affidavit, ¶ 16, p.8]. Equity cannot enforce an agreement whose terms remain vague. *Crouse v. Frothingham*, 97 N.Y. 105 (1884).

■ Even assuming a five year term could be found to exist in the agreement between the parties, plaintiff fails to demonstrate that any fraudulent promise was made. The proof presented shows that the plaintiff was aware that no agreement had been reached. Although defendants may have made encouraging remarks regarding the prospect of reaching an agreement or the undesirability of entering one, no fraudulent statements were made by either Hoelzel or Devlin according to the proof provided. Plaintiff knew of the risks inherent in providing services without the benefit of a formal agreement. [Blair Affidavit ¶ 16, p.8]. No contract having been signed, plaintiff cannot now avoid the statute of frauds.

### III

Independent of its claim for breach of contract, the plaintiff brings a claim for unjust enrichment. Plaintiff asserts that Hoelzel and Devlin never compensated Marcraft for the technical services provided in developing the balls. Plaintiff seeks damages in *quantum meruit* for the reasonable value of its technical services and "also seeks damages to the extent that defendants have been unjustly enriched by utilizing and benefitting from plaintiff's techni-

cal services without providing compensation therefor." [Plaintiff's Memorandum, p.25].

■ A claim in *quantum meruit* does not depend upon a contract's compliance with the requirements of the statute of frauds. *See Shapiro v. Dictaphone Corporation*, 411 N.Y.S.2d 669, 672, 66 A.D.2d 882, 884 (2d Dep't 1978). Nevertheless, I do not believe this is an appropriate case for the award of such equitable damages. There is no evidence to show that the defendant was unjustly enriched. Hoelzel admits that Marcraft provided Hoelzel with specifications and criticism of products that were received from Hoelzel. [Defendants' Rule 9(g) Statement, ¶ 19]. Marcraft tested Hoelzel's finished products "by organizing matches between experienced players and collecting their comments and criticisms on the various balls and advising Hoelzel of any required changes in the balls, *i. e.*, problems in workmanship such as seams failing prematurely or problems in characteristics, such as too much or too little bounce, or poor balance." *Id.* Marcraft has not described its efforts to develop Hoelzel's balls beyond this description, other than to say they marketed and advertised the balls. [Plaintiff's Memorandum, pp.3–10].

■ It is clear from the record that these efforts by Marcraft were voluntarily made. Hoelzel manufactured balls to Marcraft's specifications and sold them to Marcraft for a price. Marcraft in turn sold these balls to its customers. Both parties benefited from this relationship. Marcraft received balls which met the specifications of its customers and Hoelzel satisfied a valuable customer, namely Marcraft. A recovery for Marcraft for the value of efforts it put into marketing the balls and in developing specifications would essentially be a renegotiation of the purchases by Marcraft from Hoelzel. I cannot allow such a recovery where there is no proof that Marcraft provided services for which both parties expected additional compensation for Marcraft. *See Shapiro v. Dictaphone, supra.*

■ Defendants also seek summary judgment on plaintiff's unfair competition

claim. This claim is based on the allegation that defendants' activities in selling the handball deprives Marcraft of the exclusive rights and benefits under the exclusive distribution arrangement. [Complaint ¶ 21]. Unfair competition is a tort involving the misappropriation for commercial advantage of a benefit or property right belonging to another. *Dior v. Milton*, 9 Misc.2d 425–431, 155 N.Y.S.2d 443, 451 (Sup.Ct.), *aff'd*, 2 App.Div.2d 878, 156 N.Y.S.2d 996 (1st Dep't 1956). Although based in tort, plaintiff's claim depends on the existence of rights under the alleged contract.[1] Since I have already declared this contract invalid, plaintiff's unjust enrichment claim must fail.

### IV

Plaintiff has cross-moved to amend their complaint under Federal Rule of Civil Procedure 15(a) to include an action for fraud. Plaintiff alleges that both Hoelzel and Devlin fraudulently misrepresented to plaintiff a specific intent to enter into an exclusive distributorship agreement when they in fact never intended to honor such an agreement. [Plaintiff's Memorandum, p.28]. According to plaintiff, repeated assurances from 1975 through 1978 were made that a formal contract was forthcoming. [Plaintiff's Amended Complaint, ¶ 25]. Specifically, plaintiff asserts that Hoelzel's March 31, 1977 letter and subsequent statements by Devlin essentially constitute a promise to enter into an agreement. [Plaintiff's Memorandum pp.29–31]. No other specific statements are alleged. Plaintiff contends that the alleged misrepresentations caused plaintiff to continue to provide technical services.

■ Under Rule 15(a), leave to amend a complaint "shall be freely given when justice so requires". If a proposed amendment fails to properly state a claim for relief, however, then it would be futile for this court to permit the amendment. *See* 3 Moore's *Federal Practice* ¶ 15.08[4] (1978).

■ A claim for fraud must be pleaded with particularity. Fed.R.Civ.P. 9(b). Here, plaintiff refers to repeated assurances from the defendants that a contract would be placed in writing. Essentially, this is a claim based upon statements of future intention. Such a claim requires proof of a present intent to deceive. *See Lanzi v. Brooks*, 388 N.Y.S.2d 946, 948, 54 A.D.2d 1057, 1058 (3d Dep't 1976), *aff'd*, 402 N.Y.S.2d 384, 43 N.Y.2d 778, 373 N.E.2d 278 (1977). Although under Rule 9(b) the intent element of fraud may be averred to generally, the time, place, content of each misrepresentation and what was obtained or given up as a consequence must be pleaded. *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1088 (S.D.N.Y.1977).

■ As earlier mentioned, I fail to see how the March 31, 1977 letter constitutes a fraud in itself. Although it does acknowledge that some relationship exists between the parties, it fails to mention the duration of the relationship. It makes no assurances about entering into an agreement for a five year or even a three year term. Plaintiff states that other assurances were made by Devlin but fails to specify the manner or content of such assurances and how they were fraudulent. [Blair Affidavit, ¶ 13]. Defendants deny making any assurances at all. On the record before me, I do not believe Marcraft has stated a valid fraud claim under the requirements of Rule 9(b). Leave to amend plaintiff's complaint is therefore denied.

### V

Plaintiff opposes defendants' motion for summary judgment dismissing Devlin as a party defendant on two grounds: first, plaintiff's unfair competition claim names Devlin as a joint tortfeasor, and second, under plaintiff's amended complaint Devlin is charged with committing fraud. [Plaintiff's Memorandum, pp.31–32]. Due to my

---

1. This was not the case in *Shapiro v. Dictaphone Corp.*, 411 N.Y.S.2d 669, 66 A.D.2d 882 (2d Dep't. 1978), a case relied on by plaintiff. In *Shapiro* the court upheld a tort claim of fraud because it did not depend on the existence of the contract which the court had already barred under the statute of frauds.

dismissal of the unfair competition claim and my refusal to grant leave to plaintiff to amend its complaint, defendants' motion is granted.

In sum, summary judgment for defendants is granted in all respects. Plaintiff's request for leave to amend the complaint is denied.

SO ORDERED.