MARGATE INDUSTRIES, INC., Lancer Manufacturing Corp., and Milton Kleinman, Plaintiffs,

v.

SAMINCORP. INC., Defendant.

No. 80 Civ. 5360 (MJL).

United States District Court, S.D. New York.

March 9, 1984.

Suozzi, English, Cianciulli & Peirez, P.C., Mineola, N.Y., for plaintiffs.

Fox, Glynn & Melamed by John R. Horan, Rachel Korn, Jeffrey P. Wiegand, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

## INTRODUCTION

In this diversity action, plaintiffs by their amended complaint allege six claims arising out of a joint venture agreement with defendants.[1] There is no dispute that the parties entered into an oral joint venture to sell hardware in or about May or June 1978, with all parties expressing an intention to reduce the agreement to writing.

Plaintiffs allege that the duration of the venture was for a term of at least five years. Defendant answered by pleading, *inter alia*, the affirmative defense of the statute of frauds and moved under Federal Rules of Civil Procedure (F.R.C.P.) 12(b)(6) for dismissal of the complaint. At a pretrial conference this Court reserved ruling on defendant's motion until completion of discovery.[2]

After completion of discovery and submission of a Joint Pre-trial Order and Pre-

---

1. These claims are as follows:

 Claim I: Plaintiffs allege that defendant breached its fiduciary duty to plaintiffs by wrongfully terminating the venture without proper notice to plaintiffs and by appropriating to the defendant the property of the venture without compensation to plaintiffs. Plaintiffs seek compensatory and punitive damages, in addition to an accounting.

 Claim II: Plaintiffs allege that defendant breached its fiduciary duty by misappropriating venture assets after termination of the joint venture.

 Claim III: Plaintiffs allege a joint venture agreement for at least five years which was breached and wrongfully terminated by defendant Plaintiffs allege that writings attached to the complaint establish "an agreement in writings ... by ... the delivery, acceptance, or execution of the document."

 Claim IV: Plaintiffs allege that defendant was unjustly enriched by reason of its misappropriation of venture property.

 Claim V: Plaintiffs allege that defendant engaged in unfair competition by misappropriating venture property.

 Claim VI: Plaintiffs allege that they were fraudulently induced to enter into the joint venture agreement. Specifically they allege that defendant made a "fraudulent representation as to defendant's intent to engage in a long term joint venture" (Tr. 32) for twenty years and that defendant misrepresented that it intended to execute a written agreement with plaintiffs.

2. Although the facts disclosed in discovery are not ordinarily relevant to a Rule 12(b)(6) motion, the plaintiffs in their opposition papers indicated that they believed they could, through discovery, obtain additional documents not attached to the complaint, which would support their contentions and satisfy the statute of frauds.

trial Memoranda, another conference was held at which the Court heard oral argument on the defendant's motion. At that time, plaintiffs presented trial exhibits. Both plaintiffs and defendant based their argument on the theory of the complaint as supported or not supported by these exhibits. In addition, the Court had before it the Joint Pre-trial Order which contained the undisputed facts as agreed upon by the parties, and the disputed factual contentions of both parties.[3] Because both parties relied on documents outside the pleadings, it is appropriate that the motion presently under consideration be treated as a motion for summary judgment under Rule 56, F.R.C.P.[4] Therefore, we must reject plaintiffs' contention that in deciding this motion, the Court must assume the facts stated in the complaint to be true.

 A motion for summary judgment pierces the pleadings. However, the Court does not act as a trier of fact, but on the record before it, determines whether there are any genuine issues of material fact. *FLLI Moretti Cereali v. Continental Grain Co.*, 563 F.2d 563, 566 (2d Cir.1977). Moreover, it must resolve any doubts in favor of the party opposing the motion. *SEC v. Research Automation Corp., et al.*, 585 F.2d 31, 33 (2d Cir.1978).

 Although the initial burden is on the moving party to establish the absence of any genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975), it is clear that the opposing party must then respond with "concrete particulars" showing that there is a genuine issue to be tried. *SEC v. Research Automation Corporation, et al.*, *supra*, at 33, *citing Dressler v. The MV Sandpiper*, 331 F.2d 130, 133 (2d Cir.1964). "It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to the motion." *SEC v. Research Automation Corporation, et al.*, *supra*, 33, *citing Dressler v. The MV Sandpiper, supra*, at 133. Where a plaintiff fails to show that it has a "plausible ground for maintenance of the cause of action alleged in [its] complaint", summary judgment is appropriate. *Maldonado v. Flynn*, 485 F.Supp. 274, 286 (S.D.N.Y. 1980), *aff'd in part, rev'd in part*, 597 F.2d 789 (2d Cir.1979); *see also Reliance Insurance Co. v. Barrons*, 442 F.Supp. 1341, 1343–44 (S.D.N.Y.1977) ("Summary judgment is a remedy which must be applied when the Court is convinced as a matter of law that the suit can have only one possible outcome.")

As set forth in Part A of the Opinion, the Court finds that there is no genuine issue of material fact which would preclude summary judgment on plaintiffs' third and sixth causes of action. Those claims must be dismissed as a matter of law. As explained in Part B, the remaining claims, which involve disputes over venture assets, must be resolved in an accounting proceeding.

---

**3.** This part of the Pre-trial Order is the equivalent of a 3(g) statement. Rule 3(g) of the Civil Rules for the Southern District of New York provides:

> Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

**4.** Rule 12(b) states:

> "If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."

## A.

*Plaintiffs' Third Cause of Action for Breach of Contract*

As mentioned above, defendant argues that plaintiffs' breach of contract claim is barred by the New York statute of frauds.[5] Relying on *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953), plaintiffs take the position that Exhibits "7", "9" and "10" of plaintiffs' Trial Exhibits, when read together with plaintiffs' Trial Exhibit "6", constitute sufficient writings to remove the oral joint venture agreement from the operation of the statute of frauds. Specifically, plaintiffs argue that Exhibits "7", "9" and "10" signed by the defendant, show that a joint venture agreement existed between the parties, and that defendant's unsigned proposed draft agreement [Exhibit "6"] should be used to show that the defendant adopted a term of at least five years for the venture. Defendant responds that the parties intended only to be bound by a formal written agreement and that no such agreement was ever reached. Defendant further argues that the exhibits relied on by plaintiffs do not satisfy the statute of frauds under the *Crabtree* doctrine. Based on the undisputed facts in this case, the Court agrees with the defendant.

The record reveals that shortly after the parties began their venture, they conducted many negotiations in an attempt to reach a written agreement. Sometime during the discussions, the parties developed a format for negotiation by which defendant would submit a draft agreement to plaintiffs;[6] plaintiffs then marked up the draft to show areas of agreement and disagreement.[7]

A comparison of defendant's proposed drafts of October 1978 and January 1979 with plaintiffs' counter proposals of October 1978 and January 1979 clearly reveal that the parties did not reach agreement on many of the material terms of the venture, including the term pertaining to termination of the venture. For example, paragraph 12 of defendant's January 1979 draft (Plaintiffs' Trial Exhibit "6") entitled "Termination" states:

(a) This agreement shall continue in force until December 31, 1983, and shall be automatically renewed for three successive five-year terms thereafter, unless terminated by either party upon not less than six months written notice given to the other by registered or certified mail prior to December 31, 1983, or six months prior to the end of any succeeding five-year term. Any such termination shall not affect any existing order, obligation or other commitment incurred prior to the effective date of such termination.

(b) Notwithstanding the foregoing, this agreement shall terminate:

(i) automatically, without notice from either party to the other, immediately upon the happening of any of the following events: (A) dissolution of any party to this agreement; (B) an attempted assignment of this agreement by any party to this agreement; (C) insolvency of any party to this agreement, or the making of an assignment by any party to this agreement for the benefit of creditors, or the institution of preceeding by or against any party to this agreement in bankruptcy or under insolvency laws; or

---

5. New York State law is applicable to the instant dispute. Under the New York statute of frauds a contract which cannot be performed within one year is "void unless the contract thereof is in writing and subscribed by the party to be charged therewith, or by his lawfully authorized agent." · N.Y.Gen.Oblig.Law § 5–703(3) (McKinney 1978).

6. At oral argument the parties agreed that the unmarked draft agreements were defendant's copies (Tr. 67–69).

7. For example, plaintiffs' Trial Exhibits "4" and "5" are the same draft agreement for October 1978. Exhibit "5" was marked up by plaintiffs to show areas of disagreement by way of cross-outs, interlineations and margin notations such as "No" or "Out". Plaintiffs' Exhibit "6" is an undated draft agreement submitted by defendant for a venture term to begin January, 1979; plaintiffs' Exhibit "F" attached to the complaint is plaintiffs' copy of Exhibit "6". Exhibit "F" shows the same type of markings expressing disagreement as found on Exhibit "5".

(D) attachment, levy upon or the taking into custody of any party of the Products by any legal process; and,

(ii) by Samincorp's delivery to the Kleinman Companies of a written notice of termination effective ten (10) days after receipt of such notice by the Kleinman Companies in the case that any change, whether voluntary, by operation of law or otherwise, in the corporate office or majority shareholder status of Milton A. Kleinman in Lancer or Margate, as to try to leave the companies so that Milton A. Kleinman can compete against Samincorp under another arrangement.

(iii) by either party's delivery to the other of a written notice of termination effective (10) days after receipt of such notice in any of the following cases: (A) Breach by the parties to this agreement of any term or condition in this agreement. (B) The failure of the Joint Venture to have profits (as defined above) to at least cover the parties expenses outlined on paragraph 4. [Plaintiffs' Exhibit "6"].

Plaintiffs substituted the following (Plaintiffs' Amended Complaint Exhibit "F") for the above provisions in their counter proposal:

The Joint venture shall continue in force until at least December 31, 1983, with either party having the option to terminate upon not less than six (6) months prior to notice given by one to the other. If there is no notice given, there are automatic renewals for three successive five year terms.

Contrary to the Agreement, an automatic termination should not take place where there is an insolvency of any party or a mere institution of a proceeding by or against any party to this Agreement, in bankruptcy or under insolvency laws. The Joint Venture should only be terminated if either one of the parties is adjudicated a bankrupt through normal legal proceedings, or the making of an assignment for the benefit of creditors or other voluntary act of bankruptcy. In addition, there should be no termination due to the mere fact that there was a change in your corporate office or shareholder's status.

There should be an applicable provision inserted wherein you should have the option to sell your share of stock in either corporation, but only if Samincorp is given a right of first refusal, that being, if you receive an offer to sell your share of stock in either corporation from a third-party you should offer said share of stock to Samincorp first. If they decline to purchase the stock, then you can sell the stock to the third-party. Upon the sale of the stock to a third-party, you personally will then be restricted and will not be allowed to compete against Samincorp for a three (3) year period as set forth in paragraph 13 of the Agreement.

Termination of the Joint Venture should not take place if there is a breach by either party of *any* term or condition of the Agreement. An appropriate provision should be inserted wherein there is a termination agreement upon a breach of a material term or condition after the defaulting party has been given a sixty (60) days notice to cure said default and if said breach could not be cured during said time and the defaulting party has not diligently proceeded to cure said default for a period of time which may go beyond said sixty (60) days. Only upon said failure to cure should a termination of Joint Venture exist.

Finally, the failure of the Joint Venture to make a profit in the sale of the Products should not allow termination of the Joint Venture. The profit and loss share equally and it is a risk both parties are taking. If a party feels that profits do not justify the continuation of the Venture, there are the applicable rights of termination every five years as set forth in the first paragraph of this memorandum. [Plaintiff's Exhibit "F"].

In addition, written memoranda submitted by the plaintiffs clearly establish that the parties intended to enter into a formal written agreement, an agreement which was indisputedly never reached.

Exhibit "9" is a memorandum written by defendant, dated March 16, 1979. It states in material part:

In view of the fact that no formal agreement has yet been signed with Mr. Kleinman and as there is some dispute in relation to whether or not Kleinman shares in financing costs, the projection has been done on two bases, the one assuming that he shares in financing costs, the other assuming that he does not.

After setting forth his calculations defendant's president states:

In addition, it is considered imperative that an agreement with Kleinman be formalized without delay.

Exhibit "7" is a memorandum made by defendants of a meeting between the parties on March 30, 1979. Its only relevance to the issue herein is its statement that the parties agreed that a formal agreement, "should be concluded as soon as possible", and suggested that the simplest method of formalizing an arrangement would be for each party to bear their own costs, with gross profits, after financing costs to be split equally. This memorandum further states that plaintiffs and defendant "would meet within the next few days [to ascertain their costs] after which an agreement would be formalized."

Exhibit "10" is defendant's memorandum of a meeting held with plaintiffs dated April 16, 1979. After discussing various business problems, the memorandum states that Kleinman has overdrawn against his profit share to the extent of $12,000 and defendant is therefore financing not only inventory and receivables "but also Mr. Kleinman's side of the operation." It further states:

It was agreed that this matter [formalization of Agreement between Samincorp and Mr. Kleinman] would be left over for discussion at the next meeting, at which, Mr. Kleinman particularly wanted Mr. Vance to be present."

Based on the undisputed evidence described above the Court concludes that the agreement upon which plaintiffs' third cause of action is based, is unenforceable.

■ It is well settled that where a formal written contract is not reached, enforcement will be denied if it is found that the parties intended to be bound only upon execution of a formal document. *Scheck v. Francis*, 26 N.Y.2d 466, 470, 311 N.Y.S.2d 841, 843, 260 N.E.2d 493, 494 (1970); *APS Food Systems, Inc. v. Ward Foods, Inc.*, 70 A.D.2d 483, 485, 421 N.Y.S.2d 223, 225 (1979); *V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir.1968), *cert. denied*, 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969). If no such intention is found, the Court may proceed to consider whether there is a memorandum sufficient to satisfy the statute of frauds. Under New York law, the memorandum necessary to satisfy the statute of frauds, need not consist of one document. It may be "pieced together out of separate writings" not all of which need to be signed. *Crabtree v. Elizabeth Arden Sales Corp.,* 305 N.Y. 48, 54, 110 N.E.2d 551 (1953). Although the signed writings need not contain all of the essential terms of the contract, they must clearly establish a contractual relationship between the parties, and refer to the same transaction as the unsigned writings. *Id.* at 54–56, 110 N.E.2d 551. Furthermore, there must be convincing "corroborative evidence of defendant's assent to the contents of the unsigned memorandum...." *Id.* at 57, 110 N.E.2d 551; *see also Roulley v. Inex Co.*, 677 F.2d 14, 15 (2d Cir.1982).

■ Based on the undisputed facts and documents in this case, the Court believes it is clear that the parties did not intend to be bound to the terms of the draft agreements. The written memoranda submitted by the plaintiffs, Exhibits 7, 9, and 10, unequivocally establish that even after the last negotiating document was exchanged, the parties had not come to agreement on all of the terms of the joint venture, and that the parties not only anticipated a formal writing, but also considered such formalization of the agreement "imperative." See Exhibit 9. Accordingly, the Court finds that the plaintiffs may not rely on

defendant's draft agreement (Exhibit "6"), or any portion thereof, to show that the defendant adopted a particular provision.

Even if this Court were to find that the parties did not intend to be bound only by a written agreement, the documents relied upon by plaintiffs would not be sufficient to satisfy the statute of frauds under the *Crabtree* doctrine. First of all, unlike *Crabtree*, the signed memoranda in this case do not clearly establish a contractual relationship between the parties. The signed memoranda relied on by plaintiffs were by no means intended to authenticate the terms of the draft agreements or to create a binding contract. To the contrary, the memoranda clearly demonstrate that a final agreement was contingent upon resolution of outstanding disputes *and* the execution of a formal writing. Furthermore, the uncontroverted evidence shows that Exhibit "6", the unsigned writing relied on by plaintiffs, was merely one draft in a series of negotiating documents never mutually agreed upon by the parties. *See Brause v. Goldman*, 10 A.D.2d 328, 199 N.Y.S.2d 606, aff'd 9 N.Y.2d 620, 210 N.Y. S.2d 225, 172 N.E.2d 78 (1961); cited with approval in *John Hancock Mutual Life Insurance Co., etc. v. Carolina Power & Light Company*, 717 F.2d 664, 669 (2d Cir.1983). In particular, the evidence shows that plaintiffs rejected paragraph 12 of defendant's proposed draft, the section pertaining to termination of the agreement. See Exhibit "F" attached to the Amended Complaint. Plaintiffs cannot now be heard to claim that they have a right to enforce the provision which they themselves repudiated.

In sum, this Court finds that there is insufficient memoranda signed by the party to be charged expressing mutual agreement as to the essential terms of the contract so as to except the joint venture from the provisions of the statute of frauds. The Court further finds that since plaintiffs cannot prove the term of the venture, by a writing agreed upon by the parties, the relationship between the parties was a venture at will. *Sanger v. French*, 157 N.Y. 213, 51 N.E. 979 (1898); *Green v. Le Beau*, 281 A.D. 836, 118 N.Y.S.2d 585 (2d Dept.1953). Accordingly, plaintiffs' third cause of action must be dismissed.

*Plaintiffs' Estoppel/Part Performance Argument and Plaintiffs' Sixth Cause of Action For Fraud In the Inducement*

Plaintiffs argue that the defendant's fraud, followed by full performance by plaintiffs, together with partial performance by defendant for two years operates to remove the parties' agreement from the Statute of Frauds. The Court cannot agree.

Under New York law, part performance generally will not exempt a contract not to be performed within one year from the requirements of the statute of frauds. *See Konigsberg v. Security National Bank*, 66 F.R.D. 439 (S.D.N.Y. 1975). The equitable doctrine of part performance, however, may provide an avenue for enforcement of an unwritten contract in certain exceptional situations. Part performance that is clear, certain and definite in object and design as to be unequivocally referable to the agreement, and which will precipitate a fraud if the agreement is not enforced, removes the action from the defense of the statute of frauds. *Bankers Trust Co. v. Steenburn*, 95 Misc.2d 967, 409 N.Y.S.2d 51 (Sup.Ct. Chautauqua County 1978); *see* 56 New York Jur. §§ 247–256 (1967). *Marcraft Recreation Corp. v. Francis Devlin Co.*, 506 F.Supp. 1081, 1085 (S.D.N.Y.1981).

The criteria which must be proven before a defendant may be estopped from evoking the defense of the statute of frauds based on part performance, are as follows:

(1) a fraudulent promise or misrepresentation by defendant;

(2) upon which plaintiff justifiably relied;

(3) by engaging in an act "unequivocally referable" to the oral promise;

(4) resulting in substantial injury to plaintiff. *Id.* at 1085, 1086, *citing Philo*

*Smith & Co. v. USLIFE Corp.*, 420 F.Supp. 1266 (S.D.N.Y.1976), *aff'd*, 554 F.2d 34 (2d Cir.1977).[8]

The misrepresentations which plaintiffs allege with respect to their estoppel/part performance argument are the same as the fraud asserted in their Claim VI of the amended complaint alleging fraud in the inducement of the joint venture agreement. Therefore both the fraud element of plaintiffs' estoppel claim, and the fraud allegation under Claim VI will be treated in this portion of the opinion.

Plaintiffs claim that defendant fraudulently induced them to enter into the joint venture agreement by fraudulently representing that the terms of the agreement would thereafter be embodied in a final written agreement, and that the minimum term of the joint venture would be five years.[9]

Defendant argues and the Court agrees that plaintiffs at best allege only unfulfilled promises. Plaintiffs have presented no facts from which an intent to defraud can be inferred. To the contrary, the undisputed facts show repeated attempts by both parties to reach a written agreement, including agreement on the term of the venture. The undisputed facts also reveal that the venture continued for over a year and a half before it was terminated by the defendant.[10]

■■■ New York law is clear that an action for fraud must be based on more than a showing of non-performance. *Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572, 576 (2d Cir.1969); *Robbins v. Ogden Corp.*, 490 F.Supp. 801, 809 (S.D.N.Y.1980); *Wegman v. Dairylea Cooperative, Inc.*, 50 A.D.2d 108, 376 N.Y. S.2d 728, 734 (4th Dept.1975). Plaintiff must also prove that the promise was made with the intention not to perform. Furthermore, although questions of intent are ordinarily reserved for the trier of fact, summary judgment is appropriate where the party alleging fraud can come forth

---

**8.** Plaintiffs also rely on the closely related doctrine of equitable estoppel. The essential elements of an equitable estoppel are:

1. An act constituting a concealment of facts or a false misrepresentation;
2. An intention or expectation that such acts will be relied upon;
3. Actual or constructive knowledge of the true facts by the wrongdoer;
4. Reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment.

*Special Event Entertainment v. Rockefeller Center, Inc.*, 458 F.Supp. 72, 76 (S.D.N.Y.1978). The part performance and equitable estoppel doctrines overlap in that both *require* proof of actual fraud. They differ in that the requirement that the reliance be "unequivocally referable" to the contract in question appears to apply only to the doctrine of part performance. *See Id.* at 76, n. 6.

**9.** The Amended Complaint also alleged that the defendant fraudulently represented that it would provide plaintiff Kleinman with a salary of $65,000 per year for the entire period of the joint venture. However, plaintiffs did not make this contention in the Joint Pre-trial Order or at oral argument. To the contrary the undisputed facts in the Pre-trial Order, specifically paras. 5(a)(5) and 5(a)(7), reveal that it was the plaintiff companies' responsibility to pay Kleinman's salary. Additionally, there is no provision regarding the payment of Kleinman's salary in any of the draft agreements. Clearly, to the extent that plaintiffs have not abandoned this claim, it is totally unsupported by the undisputed facts.

**10.** Defendant claims that the Agreement was terminated at a meeting between the parties in January, 1980. The Plaintiff denies this. In any event, the undisputed evidence shows that the business relationship between the parties terminated as of March 31, 1981. The reasons for the termination are in dispute. Defendant alleges that in 1979 the business suffered substantial losses due to various wrongful acts of plaintiffs. Plaintiffs deny this and allege that defendant committed substantial defaults in 1979, particularly with respect to its record keeping and financial reporting. Plaintiffs also claim that in 1979 defendant began to claim that the financing costs were not to be borne by it alone, but shared equally between the parties. Defendant denies that it ever agreed to bear the full cost of financing.

Regardless of whose version of the facts is accepted as true, it is clear that disputes arose between the parties (well after any oral promise was ever made) which triggered defendant's termination. There is no reason to believe that defendant intended from the very beginning (at the time the alleged promise was made) not to carry out a long-term venture or enter into a written venture agreement.

with no facts to support its position, other than the fact of non-performance. *Perma Research and Development Co. v. Singer Co.,* 410 F.2d at 578. Since even after the completion of discovery and submission of a Pre-trial Order in this case, plaintiffs cannot offer a scintilla of evidence that defendant acted with fraudulent intent, the Court finds that plaintiffs' part performance/estoppel argument, as well as its claim for fraud in the inducement, must fail.

The Court notes that there is an additional reason why plaintiffs' part performance argument must fail. The performance alleged by plaintiffs is not unequivocally referable to a written contract of joint venture for at least five years; it is equally referable to the parole venture which both sides concede governed their relationship.

For all of the above-stated reasons, the Court concludes that with respect to plaintiffs' third cause of action for breach of contract and plaintiffs' sixth cause of action for fraud in the inducement, summary judgment should be granted in favor of the defendant. Plaintiffs will not be injured by this Court's decision because they will have every opportunity in an action for an accounting to receive their just apportionment of the venture property.

### B.

Claim I alleges that defendant violated its fiduciary duty to plaintiffs by misappropriating property of the venture during its term; Claim II alleges a misappropriation of venture property after "defendant wrongfully terminated the venture." On oral argument plaintiffs' counsel stated that Claim IV alleging unjust enrichment and Claim V alleging unfair competition are duplicative of Claims I and II.[11]

 Although a joint venture is not a partnership, under New York law the rights, duties and liabilities of the parties to a joint venture are governed by rules

analogous to the law of partnership. *Masterson v. Valley National Bank of Long Island,* 70 Misc.2d 623, 334 N.Y.S.2d 356 (1972). After a joint venture has been dissolved, all disputes among the venturers as to the ownership of venture assets are to be resolved in an accounting proceeding. *New York Partnership Law,* Sections 43(1), 44 and 74.[12] Since Claims I, II, IV and V involve a dispute over venture assets, the parties are directed to submit an order for an accounting proceeding to assess the claims of both parties as against the other relating to the joint venture property.

It Is So Ordered.

---

11. Tr. 31–32.

12. The only manner in which a partnership can be "wound up" is through a formal accounting

wherein its overall financial status may be evaluated. *Sitchenko v. DiResta,* 512 F.Supp. 758 (E.D.N.Y.1981).