◼ EDWARD SHAPIRO, Respondent, v DICTAPHONE CORPORATION, Appellant.—In an action by a business broker for a finder's fee, *inter alia,* based upon an alleged contract relating to the acquisition by defendant of another company, defendant appeals from an order of the Supreme Court, Westchester County, dated January 31, 1978, which denied its motion for summary judgment. Order affirmed, with $50 costs and disbursements. In this suit by plaintiff for a finder's fee, the questions raised on appeal are (1) whether there are triable issues of fact with respect to whether plaintiff produced sufficient writing to satisfy the Statute of Frauds as to his contract and *quantum meruit* causes of action, and (2) whether defendant, Dictaphone Corporation, because of the actions of some of its officers, is estopped from asserting the Statute of Frauds defense. The following facts and contentions are gleaned from the supporting and opposing affidavits submitted on the motion and from the pretrial discovery proceedings. In 1972, approximately four years before the parties to this action had any contact with each other relating to the matter in dispute, Dictaphone made a corporate decision to acquire the stock or assets of a major company. Immediately thereafter it formed an *ad hoc* acquisition committee composed of its top officers and directors (including its then president, E. Lawrence Tabat), and its in-house counsel, Robert A. Falise. In the spring of 1972 the acquisition committee held a meeting to discuss its search which, up to that time, was unsuccessful. At that meeting it was agreed that the search would be widened and, *inter alia,* "broker-finders" would be used by Dictaphone to find a company for acquisition. As Falise pointedly stated in a memorandum shortly after the meeting: "In the meantime, we agreed to take certain steps to facilitate the search for target companies, as follows: * * * 3. Discussions with investment bankers, *broker-finders* and industry contacts *should be commenced immediately to uncover acquisition targets fitting our overall objectives"* (emphasis supplied). Falise also admitted that in line with its decision to expand its search, Dictaphone sent copies of an outline entitled acquisition program to substantial numbers of investment and commercial bankers, brokers and finders. Notwithstanding its increased efforts to find a company for acquisition, Dictaphone, from 1972 to April, 1976, was unable to consummate a merger with any firm brought to its attention. However, on April 23, 1976, plaintiff, a self-employed business broker, wrote Tabat a letter in which he asked whether Dictaphone would be interested in acquiring a company which produced a line of business forms, tabulating cards and labels. Plaintiff concluded the missive with the following sentence: "If and when a deal is consummated we would look to Dictaphone Corporation for our compensation." On April 26 Tabat called plaintiff and requested the

identity of the corporation alluded to by plaintiff. The latter revealed the name of the corporation to be Data Documents, Inc. (Data Documents). In a letter dated the same day, plaintiff at Tabat's request, sent Tabat information about Data Documents. That letter also contained a statement that plaintiff expected to be compensated by Dictaphone. The information contained in the April 26 letter about Data Documents was then passed along by Tabat to Dictaphone's vice-president and controller, John T. Gaffney. After making an analysis of Data Documents, Gaffney, on April 28, transmitted a memorandum to Tabat in which he stated, *inter alia:* "This company [Data Documents] *which per Mr. Shapiro's recent correspondence to us is available for sale* has had an outstanding record of growth over the past few years". (Emphasis supplied.) Tabat testifed at his examination before trial that he requested information about Data Documents which plaintiff subsequently sent him and that plaintiff, at his request called Mr. Cleary, Data Document's president, and a meeting was then set up between Tabat and Cleary. The meeting, which took place on July 15, 1976, led to the subsequent acquisition of Data Documents by Dictaphone. Plaintiff maintains that beginning in May, 1976, he made numerous efforts to have the amount of his fee resolved. Each time he made such attempt, Tabat, in effect, stated that it was too early to discuss compensation. On the eve of the acquisition of Data Documents, plaintiff and Tabat met to discuss the former's fee. Plaintiff indicated he wanted to be compensated according to the "Lehman formula", which purportedly was the method used to determine the fee of a business broker. Under such formula, plaintiff would be entitled to about $300,000. Tabat offered $50,000 on a "take it or leave it" basis. On October 4, 1976 Tabat sent a letter to plaintiff with respect to a meeting they had had the previous week. The following excerpts are pertinent: "As I told you last Monday, *in view of the fact that you were involved in this transaction only to a minimal extent, and no written or oral agreement with regard to the amount of any fee was ever discussed by you with either of the principals or anybody else involved in the transaction,* I came to the conclusion that Dictaphone Corporation is not legally obligated to pay you anything but that a moral obligation may exist for some compensation in this connection. *Based upon the actual services performed and other circumstances that we deem relevant, I have offered you a finder's fee in the amount of $50,000,* which I think is adequate in this case. Any greater amount would involve a gratuitous corporate payment of such size as to open me and our Board of Directors to serious criticism. *In future transactions between us, we both now know that the proper way to proceed is to have a written agreement signed by both parties in advance specifying what the fee is to be in the event of a completed transaction.* I have not called the references that you sent to me in your letter of September 30th, because I have no reason to doubt your standing and reputation in the community, and I am confident that your references will support the statement in your letter that your usual fee is in accordance with the old 'Lehman formula'. I am, however, equally aware that such 'Lehman formula' is observed more often in the exception than in the adherence and notice that even the agreements that you showed me, to which you are a party, do not uniformly adhere to that formula." (Emphasis supplied.) In his amended complaint seeking actual and punitive damages, plaintiff asserted three causes of action, the first alleging fraud, and the second and third based on breach of contract, and *quantum meruit,* respectively. The answer of Dictaphone asserts that since there is no writing to satisfy the Statute of Frauds (General Obligations Law, § 5-701), it has no obligation to pay

plaintiff for any services he rendered, In its motion for summary judgment, Dictaphone asserts that the three letters from Tabat to Shapiro, dated October 4, 15 and 26, 1976, respectively, are insufficient to meet the requirements of the Statute of Frauds in that they do not memorialize all the essential terms of the alleged agreement, they affirmatively deny the existence of any agreement, and they refer only to a discussion of a possible moral obligation. Furthermore, there are no specific details with respect to the first cause of action alleging fraud, but merely conclusory boiler-plate phrases. We disagree with such arguments. In our opinion, the thrust of plaintiff's first cause of action is that Dictaphone entered into the agreement with the undisclosed intention to induce the other party to perform in reliance upon the agreement (see *Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403). Evidence supporting such premise may be found from the facts that plaintiff, on two occasions early in his dealings with Dictaphone, clearly indicated in writing that he expected to be paid for his services as a broker-finder, that Dictaphone extracted from him the name of the company as well as detailed information about it, that Dictaphone had plaintiff arrange a meeting between the presidents of both corporations and that Tabat, during his acquisition negotiations with Data Documents, kept putting plaintiff off anytime the latter brought up the question of the amount of his fee. Other evidence presented by the plaintiff in opposition to Dictaphone's motion for summary judgment demonstrated that Dictaphone had used similar methods to avoid compensating other brokers who brought companies to Dictaphone's attention for possible acquisition. Thus, the first cause of action alleging fraud is in tort, not in contract. It depends not upon an agreement between the parties, but rather upon deliberate misrepresentation of facts, relied on by the plaintiff to his detriment. One who fraudulently misrepresents himself as intending to perform an agreement is subject to liability in tort whether the agreement is enforceable or not *(Channel Master Corp. v Aluminium Ltd. Sales, supra).* The second and third causes of action, based upon breach of contract and *quantum meruit,* respectively, are not barred by the Statute of Frauds. With respect to the contract cause of action, Dictaphone's own documents and plaintiff's letters are sufficient to justify denial of the summary judgment motion. Dictaphone was informed in writing that plaintiff expected payment in the event a deal was consummated; it purportedly urged plaintiff repeatedly to perform services as a broker, while assuring him the specifics would be agreed upon at some later date, on which assurance plaintiff allegedly relied. Dictaphone then acknowledged that such services were performed in its letter dated October 4, 1976 (see *Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48). Thus, the subject matter, plaintiff's role, and the fact that plaintiff's services were never intended to be gratuitously furnished, all are set forth in written matter herein. Although a promise as to the amount of the fee is lacking, the trier of the facts could determine that the letters of Dictaphone, when read *in pari materia* with those of plaintiff, set forth a writing " 'instinct with an obligation,' imperfectly expressed" *(Wood v Duff-Gordon,* 222 NY 88, 91). If such a finding is made, there would exist a valid contract (see *Wood v Duff-Gordon, supra,* p 91). Signed and unsigned writings may be read together to evidence an integrated contract *(Crabtree v Elizabeth Arden Sales Corp., supra).* In addition to the letters transmitted between the parties, also in evidence are internal memoranda of Dictaphone indicating that plaintiff's services were used in this instance. Assuming that the Statute of Frauds is not satisfied to sustain the contract cause of action, in our opinion the writings herein would sustain the complaint as to the

*quantum meruit* claim. Under such cause of action plaintiff only seeks to recover the reasonable value of his services which Dictaphone both sought and utilized. The writings need not evidence an actual intention to pay. It is sufficient if the evidence demonstrates that services were requested and the parties reasonably expected that such services were not to be performed gratuitously. In this case, it seems obvious from the exhibits that Dictaphone knew that plaintiff never intended to render his services gratuitously. Accordingly the order of Special Term denying defendant's motion for summary judgment is affirmed. Mollen, P. J., Latham, Damiani and Titone, JJ., concur.