**PAPER CORPORATION OF the UNITED STATES, Plaintiff,**

v.

**SCHOELLER TECHNICAL PAPERS, INC., Defendant.**

No. 89 Civ. 2504 (RWS).

United States District Court, S.D. New York.

July 10, 1990.

McCarter & English, New York City (Gita F. Rothschild, of counsel), for plaintiff.

Walter, Conston, Alexander & Green, P.C., New York City (Alan Kanzer, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Defendant Schoeller Technical Papers, Inc. ("Schoeller") has moved pursuant to Rule 12(b)(6), Fed.R.Civ.P. to dismiss the amended complaint of plaintiff Paper Corporation of the United States ("Paper Corporation"). This is yet another round in the litigation between the sales representative, Paper Corporation, and the manufacturer, Schoeller, arising out of an alteration in the relationship between them. Both parties are well advised, and based upon the prior proceedings, the submissions of the parties' and the reasons set forth below, the motion to dismiss is granted in part and denied in part.

### Prior Proceedings

By an opinion of October 11, 1989 (the "Opinion") Schoeller's prior motion to dismiss the complaint of Paper Corporation was granted in part and denied in part. 724 F.Supp. 110. The Opinion described the parties, the facts, and the controversy, and those matters need no repetition or alteration here. Familiarity with the Opinion is assumed.

Since the filing of the Opinion, discovery has proceeded and on January 11, 1990 Paper Corporation filed its Amended Complaint. Schoeller moved to dismiss by the instant motion which was heard and submitted on April 13, 1990.

### The Amended Complaint

The Amended Complaint sets forth eight claims for relief. The First alleges that Schoeller breached its agreement to sell greeting card papers and nonphotographic "polycoated" paper exclusively to and through Paper Corporation so long as such customers continued purchasing such products and/or so long as Schoeller continued to manufacture such products. The second and third claims allege that Schoeller breached a contract to supply Hallmark and Fasson, respectively, exclusively through Paper Corporation. The fourth claim alleges fraud in the inception and performance of the alleged contracts. The fifth claim seeks relief under the quasi-contract theory of *quantum meruit*. The sixth cause of action sets forth promissory estoppel. The seventh alleges tortious interference with business relations, and the eighth alleges unfair competition.

### The First and Third Breach of Contract Claims Are Barred by the Statute of Frauds

The Opinion dismissed the original complaint's breach of contract claim (except insofar as it related to Hallmark) on the ground that Schoeller's alleged agreement to deal exclusively through Paper Corporation as long as customers introduced to Schoeller by it continued to place orders, came within the prohibitions of the New York Statute of Frauds, G.O.L. § 5–701(a)(1), and that none of the writings attached to plaintiff's pleading (other than those referred to Hallmark) satisfied the statute's writing requirement, citing *North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968) and noting that *North Shore* was inapplicable because:

There, the defendant retained the power to terminate the contract within one year by ceasing to distribute beer in the New York metropolitan area.

Paper Corporation now asserts:

[Paper Corporation] and Schoeller are parties to a binding and enforceable contract whereunder Schoeller undertook contractual commitments, *inter alia*, to sell all of its greeting card paper to [Paper Corporation], and to continue to sell its products, including both "greeting card" and nonphotographic "polycoated" paper, through [Paper Corporation] to

customers secured by [Paper Corporation] for such products so long as such customers continued purchasing such products and/or so long as Schoeller continued to manufacture such products.

Schoeller could have terminated the contract at any time prior to making specific commitments for specific quantities to specific customers, by ceasing to manufacture the paper products purchased by [Paper Corporation]. However, under the express and implied terms of the contract, and in accordance with the implied covenant of good faith and fair dealing, Schoeller was prohibited from selling its products directly to [Paper Corporation]s' existing customers absent [Paper Corporation]'s consent.

Notwithstanding this allegation, both the original and Amended Complaint, in virtually identical language, contend that:

> In or about 1986, Michael Gallenkamp, [at that time] the President of Schoeller Kg, promised [Paper Corporation] that Schoeller would continue to sell products in the greeting card market through [Paper Corporation] for a minimum of an additional eight to ten years.

¶ 17 of the original complaint; ¶ 36 of the amended complaint.

The significant aspect of *North Shore* for these purposes is that the alleged agreement for the distributorship, which took the arrangement out of the Statute of Frauds, itself contained the reservation that Paper Corporation now seeks to establish by the custom and practice of the trade, namely, that the manufacturer reserved the right to go out of business.

That distinction is critical here. Were the position taken by Paper Corporation adopted, the Statute of Frauds would effectively be gutted, for particularly in today's world every company faces the possibility of discontinuing some or all of its business. The Paper Corporation argument does too much, and the Amended Complaint fails to come within the *North Shore* exception.

■ Under its third claim, Paper Corporation alleges that Schoeller breached an agreement "to supply Fasson, through [Paper Corporation] exclusively, with nonpho-tographic polycoated paper sufficient to fill Fasson's orders." (Amended Complaint, ¶ 81).

After reviewing the documents attached as exhibits to the original complaint, the Opinion stated that none sufficed to memorialize an agreement between Schoeller and Paper Corporation relating to Fasson, because:

> no writing sets forth key terms such as duration, price or volume regarding Fasson's purchases. Indeed, Schoeller's internal memorandum [of June 16, 1988] indicates that the parties plan to "review" the Fasson project.

Opinion, p. 17.

The only additional writing incorporated in the Amended Complaint is new Exhibit C, a July 14, 1988 Schoeller internal memorandum concerning a July 12, 1988 meeting with Paper Corporation, the second page of which relates to Fasson. In paragraph 30 of the Amended Complaint, Paper Corporation alleges:

> As evidenced by an internal Schoeller memorandum signed by Schoeller, at a meeting between [Paper Corporation] and Schoeller on July 12, 1988, Gerhard Kemper of Schoeller reaffirmed this agreement by stating to Robert Fitzgerald of [Paper Corporation] that although there was pressure from Schoeller Kg and Fasson to eliminate [Paper Corporation] as an agent of Schoeller, Schoeller would not consider doing so as long as [Paper Corporation] continued to work "within a reasonable margin, such as 5%."

However, the next sentence of the memorandum states:

> Bob Fitzgerald said that he disagreed, considering that it was [Paper Corporation] that gave STP [Schoeller] the idea for this product.

The writing thus fails to establish an agreement.

Exhibit C also fails to satisfy the other deficiencies noted in the Opinion, namely "price or volume regarding Fasson's purchases." While the memorandum refers to "[a] new price/volume matrix was present-

ed (attached)," the attachment is not included in the exhibit and the Amended Complaint does not supply its terms. Moreover, the memorandum goes on to state that "[Paper Corporation] will present [the matrix] to Fasson with the possibility of a follow-up meeting with STP [Schoeller] personnel," indicating that the matrix was merely a proposal, which is not alleged to have been accepted by Fasson.

Consequently, the Amended Complaint fails to cure the defects that previously led this court to hold that Paper Corporation's allegations relating to Fasson are barred by the statute of frauds.

### The Fraud Claim is Dismissed

■ While it is actionable in New York to make a promise without intent to perform, *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958), it is insufficient merely to allege lack of intent; one "must allege facts to show that the defendant, at the time the promissory representation was made, never intended to honor or act on [its] statement." *Roney v. Janis*, 77 A.D.2d 555, 557, 430 N.Y.S.2d 333, 335 (1st Dept.1980), *aff'd*, 53 N.Y.2d 1025, 442 N.Y.S.2d 484, 425 N.E.2d 872 (1981); *Carlucci v. Owens–Corning Fiberglas Corp.*, 646 F.Supp. 1486, 1491 (E.D. N.Y.1986).

No facts are set forth in the Amended Complaint to show Schoeller did not intend to honor its alleged commitments. In addition, it is not alleged that the purported promises were made with the intent to deceive Paper Corporation, an essential element of any common law fraud claim.

■ Paper Corporation also alternatively alleges a failure to disclose a subsequent change of intent. Where the alleged fraud concerns the performance of a contract, as it does here, the claim is treated in New York as one sounding in contract rather than tort. *Trusthouse Forte (Garden City) Management, Inc. v. Garden City Hotel, Inc.*, 106 A.D.2d 271, 483 N.Y.S.2d 216 (1st Dept.1984); *see Vista Co. v. Columbia Pictures Industry Inc.*, 725 F.Supp. 1286, 1294 (S.D.N.Y.1989); *Air-*

*lines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F.Supp. 579, 582 (S.D.N.Y.1989).

Further, Paper Corporation fails to plead with the required specificity. The Court of Appeals has stated that "allegations, which fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentation, lack the 'particulars' required by Rule 9(b)." *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).

Paragraph 89(a), even when supplemented by paragraph 24 and Exhibit A, fails to identify who at Schoeller allegedly promised that if Paper Corporation allowed Schoeller to sell directly to 3M, Schoeller would not deal directly with any other customer. The Amended Complaint also does not indicate whether this purported promise was made orally or in writing and to whom.

Paragraph 89(b) refers to an alleged representation made on July 14, 1988 that Schoeller would not deal directly with Fasson while Paper Corporation continued to work within a reasonable margin. The subparagraph does not state who the participants were, either for Schoeller or Paper Corporation, or whether the representation was made orally or in writing. Exhibit C, an internal Schoeller memorandum of that discussion states that after Kemper commented that "Schoeller would not consider [selling to Fasson] as long as [Paper Corporation] continued to work 'within a reasonable margin, such as 5%'," Fitzgerald of Paper Corporation "said that he disagreed ..." Consequently, Paper Corporation could not have reasonably relied on Kemper's statement. Therefore the alleged misrepresentation is not actionable. *Singer v. Bell*, 613 F.Supp. 198, 204 (S.D.N. Y.1985).

Paragraph 89(c), read in conjunction with paragraph 49 of the Amended Complaint, fails to state to whom Mr. Gallenkamp allegedly guaranteed, in June 1988, that Schoeller would not deal directly with Hallmark so long as Paper Corporation continued to work within a 5% margin. The Amended Complaint also fails to state whether the promise was oral or in writing.

Paragraph 89(d) does not satisfy Rule 9(b) because the writing (Exhibit D) incorporated by reference through paragraph 50, does not state that the sales to Hallmark would be "through [Paper Corporation]." Paragraph 89(e) presents the same problem, because Exhibit E (which is incorporated by paragraph 51) similarly does not make any reference to the Hallmark sales being effected through Paper Corporation.

The remaining allegations of paragraph 89(e–j) all relate to "omissions," rather than to affirmative misrepresentations. These subparagraphs fail to allege the factual basis for Paper Corporation's allegation that Schoeller intended to deceive Paper Corporation.

■ Paragraph 90 states that "[t]hrough treachery and devise, Schoeller approached Hallmark and Fasson and induced them to deal directly with Schoeller." The Amended Complaint fails to state who on behalf of Schoeller approached whom on behalf of Fasson or when or what was allegedly said or why it was fraudulent. And while paragraphs 60–61 purport to give some additional information concerning Schoeller's allegedly wrongful conduct as to Hallmark, the Amended Complaint fails to allege who at Schoeller communicated with whom at Hallmark and whether the communications were oral or in writing. Moreover, the allegedly false statements are not alleged to have been made to Paper Corporation, Paper Corporation is not alleged to have been deceived by the alleged misrepresentations, and Paper Corporation is not alleged to have relied on them. In short, Paper Corporation lacks standing to complain of them. *Peerless Mills, Inc. v. American Tel. & Tel. Co.*, 527 F.2d 445, 449–50 (2d Cir.1975).

*Quantum Meruit May Be Pled In The Alternative*

■ A party cannot sue for *quantum meruit* when there is an express contract that covers the same subject matter. *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). A party cannot circumvent the statute of frauds by rechar-

acterizing a breach of contract claim as one for *quantum meruit*. *Seven Star Shoe Co. v. Strictly Goodies, Inc.*, 628 F.Supp. 1237, 1240 (S.D.N.Y.1986) (citing *Klein v. Smigel*, 44 A.D.2d 248, 354 N.Y.S.2d 117 (1st Dept.1974), *aff'd*, 36 N.Y.2d 809, 370 N.Y.S.2d 897, 331 N.E.2d 679 (1975)). However, where, as here, the existence of the contract is in dispute, Paper Corporation can plead *quantum meruit* in the alternative pursuant to Rule 8(e) of the Federal Rules of Civil Procedure. *See Shapiro v. Dictaphone Corp.*, 66 A.D.2d 882, 411 N.Y.S.2d 669 (2d Dept.1978) (where the statute of frauds not satisfied, writings may sustain *quantum meruit* claim).

*Promissory Estoppel Claim Fails to Allege Unconscionability*

■ The Opinion with respect to Paper Corporation's promissory estoppel claims, stated:

Paper Corporation has alleged no facts that would establish an "unconscionable injury" supporting its claims for promissory estoppel.

Opinion, p. 21.

Paper Corporation has now alleged generally that it has "suffered substantial damages" of at least $50,000 as a result of Schoeller's alleged dishonor of its promises, but no single expense that it incurred has been identified.

In *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 99 A.D.2d 522, 471 N.Y.S.2d 299 (2d Dept.1984), *aff'd*, 63 N.Y.2d 449, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984), the Appellate Division, after reviewing the allegations set forth in the plaintiff's complaint and assuming them to be true, held, as a matter of law, that they were not sufficiently egregious to make it unconscionable to enforce the statute of frauds. The present allegation thus fails to identify an injury for pleading purposes that can be considered as "unconscionable."

*The Tortious Interference Claim Remains Deficient*

■ The Opinion noted that tortious interference failed to allege either that Schoeller acted with the sole purpose of

harming Paper Corporation or employed means that are criminal or fraudulent. (Opinion, pp. 23–25).

While Paper Corporation purports to charge Schoeller with fraud, the allegations are inadequately pled as set forth above. In the absence of an allegation concerning criminal or fraudulent conduct or an interest other than economic self-interest, the pleading remains insufficient.

*The Unfair Competition Claim is Deficient*

■ The eighth and final claim for relief, denominated as "unfair competition" simply incorporates seventy-six of the prior paragraphs (Amended Complaint, ¶ 128), states that "[b]y the foregoing conduct, Schoeller has unlawfully and unfairly competed with [Paper Corporation]" (Amended Complaint, ¶ 129), and demands damages in excess of $50,000 (Amended Complaint, ¶ 130).

As the Court of Appeals noted, when faced with a similar claim:

New York law in this area [of unfair competition] is indeed flexible, but it is not that flexible.

*Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980).

Thomas McCarthy, *Trademarks and Unfair Competition* § 1.5 at 16–17 (1984), sets forth an exhaustive list of conduct that courts in various jurisdictions have found to be unfair competition:

trademark infringement, dilution of good will in trademarks; use of similar corporate, business and professional names; use of similar titles of literary works or other literary property, and or commercial goods; the appropriation of distinctive literary and entertainment characterizations; simulation of a container or product configuration; simulation of trade dress and packaging; misappropriation; "bait and switch" selling tactics; false representations and false advertising; "palming off" goods by unauthorized substitution of one brand for the brand ordered; competition by a seller of a business with the buyer; theft of trade secrets; and a former employee's solicitation of his employer's customers by

use of confidential information. (citations omitted).

In *Ray v. Proxmire,* 581 F.2d 998, 1002 (D.C.Cir.1978), *cert. denied,* 439 U.S. 933, 99 S.Ct. 326, 58 L.Ed.2d 329 (1978), the Court of Appeals observed:

In a society encouraging aggressive economic competition, this court has recognized that the tort of unfair competition is a somewhat anomalous creature. Its scope has therefore been limited to three categories: passing off one's goods as those of another, engaging in activities designed solely to destroy a rival and using methods themselves independently illegal.

In *Bunch v. Artec Int'l Corp.,* 559 F.Supp. 961, 972 (S.D.N.Y.1983), the plaintiff alleged, "[d]efendants conspired and agreed to embark on a calculatedly designed plan to compete unfairly with plaintiff, and did in fact in this manner unfairly compete with plaintiff." *Id.* at 965. Paper Corporation's allegations are sufficiently similar to be equally deficient.

The Amended Complaint's allegations do not bring Paper Corporation within the bounds of any of the traditionally recognized types of unfair competition. Paper Corporation's eighth claim is but a restatement of its prior claims. Labelling Schoeller's alleged conduct as "unfair" neither creates a new claim nor cures the defects of the other claims.

*Further Amendment Without a Factual Basis Will Not Be Permitted*

■ In *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court stated that "the grant or denial of an opportunity to amend is within the discretion of the District Court." Among the factors the Supreme Court recognized as appropriate basis for denial include failure to cure previous pleading defects and the futility of amendment. *See Prudential Ins. Co. v. BMC Indus., Inc.,* 655 F.Supp. 710 (S.D.N.Y.1987).

Although Paper Corporation's actual Amended Complaint is substantially different from the initial proposed amended pleading, it is still insufficient as set forth

**814**

above. While it is unlikely that further discovery will change the position of the parties, such a change is possible. In the event of additional information, a further amendment may be proposed by motion.

*Conclusion*

The motion of Schoeller to dismiss is granted in part as set forth above. Paper Corporation is granted leave to move to replead upon a proper showing in accordance with this opinion.

It is so ordered.