**PAPER CORPORATION OF the UNITED STATES, Plaintiff,**

v.

**SCHOELLER TECHNICAL PAPERS, INC., Defendant.**

No. 89 Civ. 2504 (RWS).

United States District Court, S.D. New York.

March 26, 1991.

---

**14.** Accordingly, the court need not address Pilotti's remaining arguments.

Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa. (Howard D. Scher, of counsel), for plaintiff.

Walter, Constan, Alexander & Green, P.C., New York City (Alan Kanzer, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Plaintiff Paper Corporation of the United States ("Paper Corporation") has moved pursuant to Rule 15, Fed.R.Civ.P. to amend its complaint in its action against defendant Schoeller Technical Papers, Inc. ("Schoeller") as well as to compel discovery from Schoeller pursuant to Rule 37, Fed.R.Civ.P. The instant motions mark another round in the litigation between the sales representative, Paper Corporation, and the manufacturer, Schoeller, that arose out of an alteration in their relationship. For the reasons set forth below, the motion to amend is denied, and the motion to compel is granted in part and denied in part.

## PRIOR PROCEEDINGS

The motion to amend comes in response to the court's opinion of July 10, 1990, (the "Amended Complaint Opinion"), granting in part and denying in part Schoeller's motion to dismiss Paper Corporation's amended complaint.

The Amended Complaint Opinion dismissed all claims except the breach of contract claim as it related to Hallmark, and the *quantum meruit* claim based on the Hallmark account.[1] The Amended Complaint Opinion noted:

---

1. The amended complaint set forth eight claims for relief. The first claim alleged that Schoeller breached its agreement to sell greeting card papers and nonphotographic "polycoated" paper exclusively to and through Paper Corporation so long as such customers continued purchasing such products and/or so long as Schoeller continued to manufacture such products. The sec- ond and third claims alleged that Schoeller breached a contract to supply Hallmark Corporation ("Hallmark") and Avery International Fasson Division ("Fasson"), respectively, exclusively through Paper Corporation. The fourth claim alleged fraud in the inception and performance of the alleged contracts. The fifth claim sought relief under the quasi-contractual

While it is unlikely that further discovery will change the position of the parties, such a change is possible. In the event of additional information, a further amendment may be proposed by motion. *Paper Corporation of United States v. Schoeller Technical Papers*, 742 F.Supp. 808, 814 (S.D.N.Y.1990) (*"Schoeller II"*). This court had previously granted and part and denied in part Schoeller's motion to dismiss the original complaint in an opinion of October 11, 1989, (the "Opinion"). *Paper Corporation of United States v. Schoeller Technical Papers, Inc.*, 724 F.Supp. 110, 117 (S.D.N.Y.1989) (*"Schoeller I"*).

Since the filing of the Amended Complaint Opinion, discovery proceeded until the cut-off date of November 30, 1990. On November 19, 1990, Paper Corporation filed its motion for leave to file a second amended complaint. Oral argument on the motion to amend was heard on December 7, 1990, and the motion was considered fully submitted as of that date.

On February 19, 1991, Paper Corporation moved to compel discovery. The court heard oral argument on the discovery motion on February 22, 1991. The court will address both motions in this opinion.

THE FACTS

Familiarity with the background of this dispute is assumed, as the court has previously set forth the history of the market conditions and the relationship between Paper Corporation and Schoeller in the Opinion. The following factual recitation assumes the facts as alleged by Paper Corporation in its proposed second amended complaint as submitted in connection with this motion. This statement of facts will therefore be limited to placing in context only those facts as alleged by Paper Corporation that are new.

Paper Corporation—a division of Paper Corporation of America—is a Delaware Corporation with its principal place of business in Valley Forge, Pennsylvania. Paper Corporation is an independent distributor of paper products. Among the companies for which Paper Corporation serves as a distributor is Schoeller. Paper Corporation has been distributing Schoeller products to manufacturers of "every day greeting cards" (the "greeting card business") since 1964. Among Paper Corporation's accounts in the greeting card business is Hallmark Cards, Incorporated ("Hallmark").

In 1979, Paper Corporation began distributing Schoeller polycoated paper products in markets other than the photographic paper market (the "polycoated business"). Among Paper Corporation's accounts in the polycoated business is Avery International Fasson Division ("Fasson").

Schoeller is a wholly-owned subsidiary of Felix Schoeller, Jr. Gmbh ("FSG"), a German corporation. Before February 1986, FSG had only a 50% interest in Schoeller, with Mead Corporation ("Mead") owning the other half. In February, 1986, Mead sold its interest in Schoeller to FSG (the "acquisition").

At a management meeting held shortly after the acquisition, Hans Michael Gallenkamp ("Gallenkamp"), the chief executive officer of FSG as well as the chairman of the board of Schoeller, called a meeting of Schoeller's management. Present at the meeting were, among others, Arlon King ("King"), a member of Schoeller management. King and Gallenkamp agreed and decided that Schoeller would terminate Paper Corporation as a sales agent.

Anticipating, however, that such termination might harm Schoeller if Paper Corporation, knowing of the termination, went ahead and found other suppliers for its customers, King and Gallenkamp devised a plan to avert such harm. They decided to keep secret Schoeller's intention to terminate its relationship with Paper Corporation pending management's resolution of various issues relating to the acquisition, until such time as Schoeller management could ascertain that, in the event that Pa-

---

theory of *quantum meruit*. The sixth cause of action set forth promissory estoppel. The seventh claim alleged tortious interference with business relations, and the eighth alleged unfair competition.

per Corporation continued to secure price and volume commitments from customers, such customers would continue to honor such commitments despite the termination of Paper Corporation.

One of the issues which Gallenkamp and King sought to resolve was the termination of STP's then president, Richard O. Gall ("Gall"). Gall supported Schoeller's relationship with Paper Corporation, and so Gallenkamp and King took the decision not to inform Gall of their plans for Paper Corporation's termination, and, moreover, to engineer his departure.

THE GREETING CARD BUSINESS

In 1986, at a meeting following the Schoeller management meeting, Gallenkamp assured Robert F. Fitzgerald ("Fitzgerald"), the President of Paper Corporation, that Schoeller would continue to sell greeting card paper through Paper Corporation for a minimum of eight to 10 more years. Gallenkamp did not at this time disclose to Fitzgerald his intent to terminate Paper Corporation once it had secured from customers future commitments for Schoeller products.

In the spring of 1987, Gallenkamp and FSG became aware of increased demand for the photographic paper produced by FSG. To fill that demand, FSG management determined to commit Schoeller to producing photographic paper rather than greeting card paper. Gallenkamp accordingly asked Gall to arrange for Paper Corporation to announce to customers that Schoeller intended to stop producing greeting card papers. When it later became clear that Schoeller would not be experiencing as much increased demand in the photographic paper business as anticipated, Schoeller management decided that Schoeller would have to attempt reentry in to the greeting card business. Schoeller asked Paper Corporation to effect reentry.

In March of 1988, Paper Corporation negotiated with its customer Hallmark a price increase on Schoeller's behalf. The following month, Fitzgerald warned Gary Richmond of Schoeller that the recent price increases were endangering the Hallmark account. Schoeller accordingly revised its procedures for filling Hallmark's orders.

In May 1988, Gallenkamp requested Gall's resignation. Gerald Kempner ("Kempner") replaced Gall as President of Schoeller.

On approximately June 29, 1988, Schoeller wrote to Paper Corporation enclosing an internal memorandum of Schoeller confirming Schoeller's guarantee to sell to Hallmark through Paper Corporation 4,000 tons in 1988, 6,000 tons in 1989, and 5,000 tons per year "in 1990 and beyond." The letter requested discussions with Paper Corporation regarding Schoeller's proposed pricing structure through April 1989.

At a meeting between Kempner, King, and Robert Bishop ("Bishop"), manager of production services for Schoeller, and Fitzgerald, Fitzgerald advised the Schoeller representatives that Hallmark wanted Schoeller's five year commitment expressed in writing. On approximately August 18, 1988, Kempner wrote to Fitzgerald "to reiterate our commitment to supply Hallmark with greeting card paper in the following quantities ...".

In anticipation of a meeting between Paper Corporation and Hallmark on September 30, 1988, Fitzgerald requested that Schoeller outline areas of discussion. In a letter to Fitzgerald responding to Fitzgerald's request, King reiterated the commitment made by Kempner on August 18, 1988, and stated that Schoeller looked forward to "the continuation of the good working relationship which [Schoeller] ha[d] with Paper Corporation/Hallmark."

Another meeting between Hallmark, Fitzgerald, and King Kempner and Bishop took place on November 30, 1988. In preparation for this meeting, Paper Corporation advised Schoeller that Hallmark was expecting to initiate a "just in time" program that would require more frequent deliveries and might cause Hallmark to deal with fewer suppliers. At the November 30, meeting, King asked James Woods of Hallmark if the termination of Paper Corporation would affect negatively Schoeller's prospects of continuing as a supplier to

Hallmark. Woods responded in the negative.

On January 6, 1989, Bishop and Kempner again met with Hallmark representatives in Kansas City, Missouri. Hallmark agreed that if Schoeller were successful in terminating Paper Corporation and dealing directly with Hallmark, Hallmark and Schoeller could split the commission otherwise owed to Paper Corporation. On January 13, 1989, Kempner told Fitzgerald for the first time that STP intended to terminate Paper Corporation and to deal directly with those customers which Paper Corporation had obtained for Schoeller's paper.

## THE POLYCOATED PAPER BUSINESS

In 1981, in exchange for Paper Corporation's agreement to let Schoeller deal directly with its customer 3M, Schoeller agreed not to deal directly with any of Paper Corporation's other customers, including Fasson, and pursuant to that agreement, Schoeller declined to deal directly with Fasson when Fasson requested it to do so.

At a July 12 meeting between Paper Corporation and Schoeller, Kempner reaffirmed this agreement by stating to Fitzgerald that Schoeller would not consider termination as long as Paper Corporation continued to work "within a reasonable margin, such as 5%." The Schoeller memorandum recording this meeting also reflects that Fitzgerald "disagreed" that 5% was a reasonable margin.

At a meeting of July 14, 1988, Kempner asked Fitzgerald to present a volume and price matrix to Fasson, which matrix Fasson duly received and accepted.

King later induced Fasson to terminate the orders and place them directly with Schoeller, falsely representing to Fasson that Lou Healy of Paper Corporation agreed to such termination.

At a meeting of Schoeller's board on December 2, 1989, the board authorized the termination of Paper Corporation.

## I. *The Motion to Amend*

Pursuant to the Amended Complaint Opinion, the claims currently pending in front of this court are the breach of contract claim relating to the Hallmark account, and, in the alternative a claim of quantum meruit. The instant motion seeks to add to the complaint following claims: As Count I of the proposed second amended complaint, Paper Corporation seeks to reinstate the claim that Schoeller breached its agreement to sell greeting card papers and nonphotographic "polycoated" paper exclusively to and through Paper Corporation so long as such customers continued purchasing such products and/or so long as Schoeller continued to manufacture such products. As Count III of the proposed second amended complaint, Paper Corporation seeks to reinstate Count III of the amended complaint, the breach of contract claim based on the Fasson account. As Count IV of the proposed second amended complaint, Paper Corporation also seeks to revive Counts IV and V of the amended complaint, the fraud claims as they relate to the Hallmark and the Fasson accounts, respectively. Paper Corporation also seeks to renew the Promissory Estoppel claim, the Tortious Interference with Business Relations claim, and the Unfair Competition claim as Counts VI, VII and VIII of the proposed second amended complaint.

### A. The Breach of Contract Claim Based on the Fasson Account

A contract within the statute of Frauds must be memorialized in a writing "subscribed to by the party to be charged." N.Y.Gen.Oblig. Law § 5–701(a) (McKinney 1990). New York's Statute of Frauds, however, does not require the "memorandum ... to be in one document. It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion." *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953). The "separate writings" may include correspondence between the parties, as well as the defendant's internal memoranda. *See Shapiro v. Dictaphone Corp.*, 66 A.D.2d 882, 411 N.Y.S.2d 669, 672 (2d Dep't 1978).

The court has already twice held that the Statute of Frauds bars Paper Corporation's claim that Schoeller agreed to sell paper to Fasson solely through Paper Corporation. *Schoeller II*, 742 F.Supp. at 810–811; *Schoeller I*, 724 F.Supp. at 117.

In the instant motion, Paper Corporation has submitted no new documents that it claims satisfy the statute's writing requirements. As it did in *Schoeller II*, Paper Corporation relies on the language contained in Schoeller's internal memorandum:

> Gerald Kempner commented that there is pressure from the parent company and the customer to reconsider the need for [Paper Corporation] as an agent. He said that we would not consider otherwise as long as [Paper Corporation] works within a reasonable margin—such as 5%. Bob Fitzgerald said that he disagreed, considering that it was [Paper Corporation] that gave [Schoeller] the idea for this project.

■ Rather, Paper Corporation points to testimony garnered from various depositions taken since the issue of the Amended Complaint Opinion as evidence for its argument that the July 12, 1988 memorandum constitutes an agreement within the Statute of Frauds. This new evidence from the depositions relates to the intent of the parties at the time of the July 12, 1988 meeting. Whatever the parties' intent, however, such evidence fails to meet the statute's *writing* requirement. *See, Shapiro*, 66 A.D.2d at 882, 411 N.Y.S.2d at 669, 672; *Crabtree*, 305 N.Y. at 48, 110 N.E.2d 551. Such evidence of intent goes to interpreting the contract once it has been established that there is an agreement, but does not under the Statute of Frauds establish the threshold question of a written agreement. Therefore, Count III of the proposed second amended complaint is denied, as well as Count I in so much as it relates to Fasson and the polycoated business.

### B. The Fraud Claim

In order to withstand a motion to dismiss pursuant to Rule 9(b), Fed.R.Civ.P., a complaint pleading fraud must allege the time, place, speaker, and sometimes content of the alleged misrepresentation. *Ouaknine v. McFarlane*, 897 F.2d 75 (2d Cir.1990). In this case, the elements that must be pleaded with particularity are that Schoeller made false statements, that Paper Corporation was deceived by such statements, and that Paper Corporation relied on such statements.

### 1. *The Hallmark Claim*

In the First Amended Complaint Opinion, the court dismissed Paper Corporation's fraud claim relating to the greeting card business and the Hallmark account on the grounds that it did not plead fraud with sufficient particularity to survive a motion to dismiss. *Schoeller II*, 742 F.Supp. at 811. Alternatively, the Opinion noted that under New York law, "where the alleged fraud concerns the performance of a contract, as it does here, the claim is treated as one sounding in contract rather than tort." *Id.*, citing *Trusthouse Forte (Garden City) Management, Inc. v. Garden City Hotel, Inc.*, 106 A.D.2d 271, 483 N.Y.S.2d 216 (1st Dept.1984); *Vista Co. v. Columbia Pictures Industry Inc.*, 725 F.Supp. 1286, 1294 (S.D.N.Y.1989); *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F.Supp. 579, 582 (S.D.N.Y.1989).

In the instant case, Paper Corporation's fraud claim with respect to the Hallmark account as set forth in the proposed second amended complaint relates solely to the alleged breach of contract. The alleged fraud, as pleaded in the proposed second amended complaint, derives from Schoeller's alleged decision of February 1986 to terminate its relationship with Paper Corporation. That decision, according to the complaint, rendered fraudulent any ensuing contracts between Schoeller and Paper Corporation with respect to the Hallmark Account. The fraudulent conduct, according to Paper Corporation, may be inferred from the intent to terminate and the subsequent breach.

■ Given the *Trusthouse Forte* rule that a claim for fraud will be dismissed when "the only fraud charge relates to a breach of contract," *Trusthouse Forte*, 106 A.D.2d at 271, 483 N.Y.S.2d at 218, the court need not consider whether Paper Cor-

poration's proposed Second Amended complaint meets the requirements of Rule 9(b), Fed.R.Civ.P. *See Vista Co.,* 725 F.Supp. at 1293.

Nor do the facts as alleged fall within the holding of *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958). In *Channel Master,* the Court of Appeals held that the plaintiff's fraud claim was not barred where the basis of the alleged fraud was a misrepresentation made by defendant to induce the plaintiff to enter into the contract. The plaintiff did not however, assert a claim of breach of contract in addition to the fraud claim. The court noted that "if the proof of a promise of contract, void under the statute of frauds, is essential to maintain the action, there may be no recovery...." *Channel Master,* 4 N.Y.2d at 406, 176 N.Y.S.2d at 262, 151 N.E.2d at 835.[2] Therefore, without reaching the issue of whether the fraud claim relating to the Hallmark account pleads fraud with particularity, the claim must be dismissed on the grounds set forth in *Trusthouse Forte.*

### 2. *The Fasson Claim*

The Amended Complaint Opinion dismissed Paper Corporation's fraud claim with respect to Schoeller's conduct regarding the Fasson Account on the grounds that, *inter alia,* Paper Corporation did not allege facts sufficient to warrant the inference that Schoeller did not intend to perform in accordance with its promises.

■ As regards the fraud claim based on Schoeller's conduct relating to the Hallmark account, the new allegation that Gal-

lenkamp intended to terminate Paper Corporation as early as 1986 sufficed to warrant an inference of fraud. In so far as the fraud claim is based on Schoeller's conduct relating to the Fasson account, the facts taken together do not justify such an inference where, regarding the Fasson account, there exists no agreement upon which Paper Corporation could reasonably have relied. *See Schoeller II,* 742 F.Supp. at 811. Accordingly, Paper Corporation's motion to amend the complaint to include a fraud claim based on the Fasson account is denied.

### C. The Promissory Estoppel Claim

■ Under New York law, the doctrine of promissory estoppel as a bar to the assertion of a Statute of Frauds defense, has been construed to apply only in those cases where " 'the circumstances are such as to render it unconscionable to deny the oral promise upon which the promisee has relied.' " *Swerdloff v. Mobil Oil Corporation,* 74 A.D.2d 258, 263, 427 N.Y.S.2d 266, 269 (2d Dept.1980), *appeal den., Swerdloff v. Mobil Oil Corp,* 50 N.Y.2d 913, 431 N.Y.S.2d 523, 409 N.E.2d 995 (1980), citing 3 Williston, Contracts [3d ed.] § 533A, p. 801). Moreover, the doctrine is properly reserved for a "limited class of cases ...". *Philo Smith & Co. v. USLIFE Corp.,* 554 F.2d 34, 36 (2d Cir.1977).

Paper Corporation's proposed second amended complaint has alleged no new facts sufficient to warrant deviating from this court's holding in the Opinion that Paper Corporation did not allege facts suf-

---

**2.** Nor does this court's decision in *Bower v. Weisman,* 650 F.Supp. 1415 (1986), citing *Channel Master,* require a different result. In *Bower,* this court held that *Channel Master* governed the agreement between plaintiff and defendant so as not to preclude plaintiff's fraud claim. The opinion based its holding on the fact that the promise at issue in *Bower,* like the promise at issue in *Channel Master,* stated a present intent to perform, as opposed to a prediction about the future. "A person's intent, his state of mind, it has long been recognized, is capable of ascertainment and a statement of present intention is deemed a statement of a material existing fact, sufficient to support a fraud action." *Bower,* 650 F.Supp. at 1423, citing *Channel Mas-*

*ter,* 4 N.Y.2d at 407, 176 N.Y.S.2d at 262, 151 N.E.2d at 836, quoting Restatement (First) of Torts § 525 at 59 (1938) (comparing promise at issue in *Bower* to defendant's factual assertion in *Channel Master* that defendant possessed the goods he was seeking to sell).

In contrast to the situation in *Bower,* Paper Corporation's fraud claim is based more on a future intention than on a misrepresentation of present intention. *See* ¶ 47 of the proposed second amended complaint (stating that Gallenkamp of Schoeller assured Fitzgerald of Paper Corporation that Schoeller "would continue to sell greeting card paper through [Paper Corporation] for a minimum of 8 to ten more years").

ficient to make out a claim of promissory estoppel. In that opinion, the court noted the case of *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 99 A.D.2d 522, 471 N.Y. S.2d 299 (2d Dep't), *aff'd*, 63 N.Y.2d 449, 472 N.E.2d 992, 483 N.Y.S.2d 164 (1984), a case involving an oral subdistributorship agreement. *Schoeller I*, 724 F.Supp. at 118. In *D & N Boening*, the plaintiff sued for promissory estoppel, claiming that the defendant's promises induced it to "structure its growth around Yoo–Hoo as its prime beverage, to invest considerable sums of cash in the plant and capital equipment, to increase its payroll, and to forego other possible beverage distributorships." 471 N.Y.S.2d at 302.

Paper Corporation in the proposed second amended complaint makes no new allegations concerning the extent of its injury. Therefore, based on the Opinion, which declined to find the existence of an injury that would make denying the existence of a promise "unconscionable" (*Schoeller I* at 118), Paper Corporation's motion to amend the complaint by adding a promissory estoppel claim is denied.

### D. Tortious Interference with Business Relations

The proposed second amended complaint also sets forth a claim for tortious interference with business relations. The Opinion dismissed this claim on the grounds that Paper Corporation pleaded its fraud claim inadequately. *Schoeller I*, 724 F.Supp. at 120. The holding with respect to the fraud claim as amended in part IB above requires the same result with respect to the instant motion.

### E. Unfair Competition

To support its unfair competition claim, Paper Corporation relies on language quoted in the Amended Complaint Opinion stating that misappropriation, false representation, and competition by a buyer with a seller constitute "unfair competition." *Schoeller II*, 742 F.Supp. at 813 (citing McCarthy, Trademarks and Unfair Competition § 1.5 at 16–17 (1984).

Paper Corporation, however, apparently ignores the next paragraph in the above cited opinion, which cites the case of *Ray v. Proxmire* for the proposition that the scope of the unfair competition action is limited to three categories: "passing off one's goods as those of another, engaging in activities solely to destroy a rival and using methods themselves independently illegal." 581 F.2d 998, 1002 (D.C.Cir.), *cert. denied*, 439 U.S. 933, 99 S.Ct. 326, 58 L.Ed.2d 329 (1978).

■ The allegations making up Paper Corporation's claim of unfair competition do not describe any of the above activities. If anything, Schoeller engaged in the alleged fraudulent representations to advance its own business, and not solely to destroy that of Paper Corporation. The "misappropriation" alleged by Paper Corporation in the complaint, moreover, does not relate to the kind of misappropriation that allows a competitor to "pass off" his goods as those of another. In addition, none of the allegations forming the basis for the unfair competition claim, *e.g.*, fraud, breach of contract, constitutes "methods themselves independently illegal."

■ Finally, under New York law, the likelihood of confusion of the plaintiff's and defendant's products has been held to be a necessary element of a common-law unfair competition claim. *See Berlitz Schools of Languages, Inc. v. Everest House*, 619 F.2d 211 (2d Cir.1980) (likelihood of confusion *"sine qua non"* of unfair competition action); *Pristine Indus. v. Hallmark*, 753 F.Supp. 140 (S.D.N.Y.1990). Paper Corporation makes no such allegation in its proposed second amended complaint; the proposed amendment would thus not withstand a motion to dismiss. Therefore, its motion to add an unfair competition count to the complaint is denied.

### II. *The Motion to Compel*

#### A. Background

After the filing of the original complaint in April of 1989, Schoeller moved to dismiss the complaint and for a protective order staying discovery pending the disposition of the motion to dismiss pursuant to Rule 26(c), Fed.R.Civ.P. At a hearing on those motions on June 8, 1989, the court stayed

all discovery. On October 11, 1989, the court dismissed all of Paper Corporation's claims except for the breach of contract claim that pertained to sales to Hallmark.

On November 13, 1989, Schoeller served its responses to Paper Corporation's first set of interrogatories, document requests, and requests for admissions (the "first set of interrogatories"). Schoeller objected to those requests that pertained solely to the dismissed claims.

On November 29, 1989, Paper Corporation moved for leave to amend its complaint, based on deposition discovery of Gall and of Hallmark. At a hearing on December 15, 1989, the court (1) permitted Paper Corporation to revise further the pleading before serving it and (2) restricted discovery to the Hallmark claim until the court ruled on Schoeller's anticipated motion to dismiss the amended complaint.

From the time of the December 15 hearing until after the courts issuance of the Second Amended Complaint Opinion on July 10, 1990, no further discovery was taken.

On October 31, 1990, Paper Corporation served a second set of interrogatories and document requests (the "second set of interrogatories"). The second interrogatory request sought, among other things, information relevant only to the claims dismissed in the Amended Complaint Opinion.

Schoeller responded to the second set of interrogatories on November 30, 1990, the date fixed by the court with the agreement of the parties for the completion of discovery. Schoeller objected to many of the document requests on the grounds that the requests (i) went beyond the allowable scope of Rule 26(b)(1), Fed.R.Civ.P., (ii) related to dismissed claims or (iii) were duplicative or unreasonably burdensome. Schoeller offered Paper Corporation the opportunity to inspect the documents.

In the meantime, the parties proceeded with depositions. On November 28, 1990, Paper Corporation took the deposition of Robert Bishop, Schoeller's Manager of Production Services. Bishop testified that, upon the instruction of counsel, he had withheld from discovery certain informa-

tion, relating to, *inter alia*, the claims which the Amended Complaint Opinion had dismissed.

Counsel for Paper Corporation made several requests for the documents believed to be withheld, first at the November 28, 1990 deposition, and later by two letters to Schoeller's counsel. By letters of January 17, 1991, and of January 30, 1991, counsel for Schoeller stated its belief that the documents requested fell outside the permissible scope of discovery.

Paper Corporation filed its motion to compel on February 19, 1991. The motion seeks to resolve the discovery dispute that has arisen with respect Schoeller's responses to essentially two sets of requests, (1) Schoeller's responses to the first and second sets of interrogatories (the "interrogatory responses") and (2) Schoeller's response to Paper Corporation's request that it produce the documents referred to in the November 28 deposition of Bishop (the "Bishop documents").

### B. The Bishop Documents

Paper Corporation seeks discovery of the documents that Bishop testified he had withheld, pursuant to the instruction of counsel, on the ground that they related only to dismissed claims.

Rule 26, Fed.R.Civ.P. provides in pertinent part, "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Interpreting the meaning of the phrase "relevant to the subject matter involved in the pending action" for the purposes of a motion relating to discovery for class action purposes, the Supreme Court in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352, 98 S.Ct. 2380, 2390, 57 L.Ed.2d 253 (1978) stated that "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, or to event that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case."

 Thus, while the phrase "relevant to any subject matter involved in the pending action" has been construed broadly to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case", *id.* at p. 351, 98 S.Ct. at 2389, citing *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947), drawing the line at stricken claims, where in this case, Paper Corporation has had several opportunities to revise the pleadings, seems an appropriate boundary. *See Oppenheimer*, 437 U.S. at 351–52, 98 S.Ct. at pp. 2389–90. Moreover, where, as here, drawing the line to exclude requests relating solely to the Fasson account allows for a neat partition of the discoverable from the undiscoverable.

Accordingly, Schoeller need not produce those of the Bishop documents that relate solely to the Fasson claims. Schoeller must respond to those items among the Bishop document requests as set forth and identified on p. 4 at ¶ 17 of the affidavit of Paper Corporation's counsel Howard Scher (the "Scher Affidavit") as follows: the Bishop "crib sheet" (item (1) of ¶ 17); documents relating to direct sales to Paper Corporation customers/former Paper Corporation customers relating to the greeting card business (item (3)); historical sales data relating to the greeting card business (item (4)); summary calculations listing capacity as it relates to the greeting card business (item (5)); analyses prepared by Schoeller relating to the greeting card business (item (6)); business plans relating to the greeting card business (item (7)).

### C. The Interrogatory Responses

In accordance with the holding as set forth above, Schoeller is ordered to produce the responses to the following requests as set forth in the Scher Affidavit ¶ 20: items (1), (2), and (6), to the extent that the items sought relate to the greeting card business. Pursuant to the requests set forth in items (7), (8) and (10), Schoeller is ordered to provide a breakdown by customer of figures requested in so far as they relate to the greeting card business.

### CONCLUSION

For the reasons set forth above, Paper Corporation's motion to amend the complaint is denied. Paper Corporation's motion to compel is granted as set forth above with regard to those items requested that relate to the claims now pending before the court.

It is so ordered.