■ Sass Khazzam et al., Appellants, v Tremont Advisers, Inc., et al., Respondents. [626 NYS2d 66] —Order, Supreme Court, New York County (Lorraine S. Miller, J.), entered August 22, 1994 which, insofar as appealed from, denied plaintiffs' motion to dismiss defendants' third affirmative defense, asserting lack of jurisdiction, and seventh affirmative defense, based on the Statute of Frauds, affirmed, without costs.

Plaintiff Sass Khazzam allegedly developed the concept of marketing an off-shore, multi-manager investment fund for Latin American investors based in the Miami, Florida area. Khazzam thereafter met with Sandra Manzke, an officer and director of defendant corporations, which are in the business of coordinating and marketing investment funds, for the purposes of developing and implementing plaintiffs' marketing concept. Shearson subsequently became interested in Khazzam's concept and in March 1992, Khazzam received an invitation to present a proposal at Shearson's quarterly product development conference.

Khazzam contends that he subsequently met with Manzke and discussed his idea of developing an entirely new off-shore fund which Shearson could include in its system from the onset. Khazzam also contends that he invited Manzke to the conference at that time and that Manzke allegedly offered him an 80%-20% split of the revenues generated by such a fund. Khazzam thereafter made a second presentation to Shearson on April 7, 1992, shortly after which Shearson endorsed the proposal.

The next step in the process was the technical organization of the fund, which was to be known as the Global Advisors Portfolio, N.V. (the "Global Fund") and with which Khazzam

had little involvement as this process was within Manzke's field of expertise. Khazzam asserts that in the following months he often attempted to contact Manzke to check on the fund's progress, offer assistance or inquire about the fee arrangement, but that Manzke did not take his calls and routed him to a subordinate.

In January 1993, upon hearing that the Global Fund was about to be launched, Khazzam became concerned due to the fact that his alleged financial agreement with defendants had never been memorialized. By letter dated February 10, 1993, Khazzam wrote to Manzke, *inter alia:*

"In view of your extremely busy schedule * * * I take this opportunity to confirm * * * our understanding with regard to the formation of the Global [Fund].

"We have agreed that pursuant to our mutual efforts vis-a-vis Lehman, and the successful formation of the fund, all *fees* generated from this business shall be divided in the ratio of 80% to Tremont and 20% to [plaintiff] Kazco Mgt. Inc.

"Nevertheless, to avoid any future potential misunderstandings, don't you think it would be appropriate to record our agreement in a more formal manner?" (Emphasis added.)

On February 11, 1993, Manzke faxed the following response: "Just a note to confirm that, I agreed in light of your marketing efforts on behalf of Tremont, to split *revenues* generated from the Shearson Global Fund with you on a 80%/20% basis. In the next several weeks we can draw up a more difinitive *[sic]* agreement. I do not have a contract with Lehman as yet, but when I do I'll let you know. Right now, this fund is taking up 150% of my time as it is now a crisis to complete." (Emphasis added.)

On February 22, 1993, Manzke, on behalf of defendant Tremont Bermuda Limited, executed an investment-manager agreement with Shearson for the Global Fund which provided, *inter alia,* that Tremont would receive two distinct forms of compensation: an asset-based fee for its administration of the fund; and an incentive fee that correlates with the fund's performance. By letter dated April 28, 1993, Khazzam wrote to Manzke to express his pleasure at the Global Fund's performance and to suggest that the more definitive agreement addressed in the previous correspondence should now be drawn up.

The following day, Tremont faxed a proposed letter agreement to Khazzam which, *inter alia:* acknowledged that Khazzam had facilitated the introduction of Tremont to the Global

Fund; and provided that Khazzam would receive 20% of Tremont's gross revenues from the fund for a five-year period, gross revenues to be defined as the management fees received by Tremont under the Shearson contract minus administration and accounting expenses. The proposed agreement specifically excluded the incentive fees from Khazzam's compensation.

By letter dated May 5, 1993, Khazzam informed Manzke that the proposed agreement contradicted her letter of February 11, 1993. Khazzam also contested the exclusion of the incentive fees and the "arbitrary" limit of five-years, as he felt that he should be compensated for the life of the fund.

The parties never resolved their differences and Khazzam was never paid any part of Tremont's revenues from the fund, which apparently outperformed all expectations and was extraordinarily successful. In August 1993, Khazzam commenced the underlying action interposing three causes of action: breach of agreement; quantum meruit; and requesting an accounting from Tremont, respectively. Tremont answered the complaint and pleaded seven affirmative defenses.

Defendants voluntarily withdrew their first affirmative defense (lack of jurisdiction due to improper service) and cross-moved to dismiss the complaint against all of the defendants except Tremont Bermuda Limited. The IAS Court, due to numerous, unresolved issues of fact between the parties, granted plaintiffs' motion only to the extent of dismissing the first affirmative defense and granted defendants' cross-motion only with respect to Manzke, individually, who, the court found, did not act in her individual capacity.

Plaintiffs now appeal from so much of the IAS Court's order which denied their motion for summary judgment to dismiss the third (lack of jurisdiction) and seventh (Statute of Frauds) affirmative defenses. Defendants have since withdrawn all jurisdictional defenses and, as a result, that part of the appeal which addresses the third affirmative defense is moot.

We agree with the IAS Court that when viewing the writings collectively, issues of fact exist with regard to material terms of the agreement and as to whether there was a meeting of the minds to formulate a valid contract, such as: what services Khazzam actually performed; whether he merely introduced Manzke to Shearson (i.e., a "finder") or whether he performed marketing services for the fund; what Khazzam's role was after the fund was launched; whether Khazzam was entitled to compensation for the life of the fund

or a shorter period; and whether Khazzam would be compensated based on "revenues" or "fees" and the parties understanding as to the definition of these terms, all of which are matters to be resolved at trial and which precludes summary judgment dismissing the Statute of Frauds affirmative defense (see, e.g., Berne Investors v Wechsler, 152 AD2d 804, 806; Shapiro v Dictaphone Corp., 66 AD2d 882, 884). Concur— Rosenberger, J. P., Asch and Tom, JJ.

Kupferman, J., concurs in part and dissents in a memorandum as follows.

While I agree with the Court that we cannot yet determine as a matter of law that the writings constitute a contract, I would modify to dismiss the seventh affirmative defense based upon the Statute of Frauds.

The seventh affirmative defense states, "[t]he claims asserted are barred by the statute of frauds."

There are several writings here that clearly take the matter out of the Statute of Frauds (see, Brylgrove Ltd. v Tompkins, PLC, 172 AD2d 452, 454). Accordingly, the seventh affirmative defense should be dismissed.